**Jack Lawson COKE, Jr., Appellant,**

v.

**Sally Summers COKE, Appellee.**

**No. 05–89–01092–CV.**

Court of Appeals of Texas, Dallas.

Sept. 21, 1990.

Rehearing Denied Oct. 30, 1990.

Jack L. Coke, Jr., Dallas, pro se.

Charles G. Childress, Austin, for appellee.

Before HOWELL, LAGARDE and THOMAS, JJ.

## OPINION

THOMAS, Justice.

Jack Lawson Coke, Jr. (Father) appeals from an adverse order in favor of Sally Summers Coke (Mother), which granted a money judgment for past due child support, increased the amount of future child support, and assessed Mother's attorney's fees against him. In thirteen points of error, Father complains generally that: (a) the decree of divorce cannot support the money judgment because it is vague and indefinite; (b) his legal obligation to pay child support under the decree of divorce ended upon the entry of subsequent temporary orders; (c) the child support orders at issue were not properly authenticated; (d) the trial court erred in not allowing him a full opportunity to be heard and present evidence; (e) the new child support amount is not in compliance with the Child Support Guidelines; (f) the trial court erred in granting the attorney's fees because the sum was unreasonable, unconscionable, and unlawfully punitive in effect; and (g) the trial court's findings of fact and conclusions of law were erroneous and incomplete. For the reason stated below, we overrule all points and, accordingly, affirm the trial court's judgment.

## FACTUAL BACKGROUND

A judgment nunc pro tunc was entered on December 22, 1982 (1982 decree), which dissolved the marital relationship, divided the community assets and liabilities, appointed Mother the managing conservator of the two minor children, named Father possessory conservator with the right of reasonable visitation upon reasonable notice, and ordered Father to pay the sum of $500 per month, per child, as child support. In July 1986, Mother gave notice to Father of her intention to move to Houston with the two minor children. At that time, Father filed a motion to modify conservatorship. While this motion was pending, a number of temporary orders were entered.

The first temporary order signed August 7, 1986, provided specified periods of visitation for Father with the children. The order also provided that the child support of $500 per month, per child, would be paid through the offices of Mother's attorneys. A second temporary order entered by agreement on September 19, provided that the minor son would reside with Father in Dallas during the fall school semester beginning September 20, while the minor daughter would remain with Mother. There were no changes in the designation of conservatorship, although this agreed order granted specific periods of visitation for each of the parents with each of the children and provided for the payment of transportation expenses. In addition, the agreed order provided that all discovery would be abated until December 1, 1986, and that the motion to modify would be held in abeyance until some time after January 1, 1987. Finally, this order stated that the trial court would hear and determine issues concerning interim child support on a subsequent date. The trial court conducted a hearing on September 26, 1986, and entered an order (September order) providing that Father would pay to Mother temporary child support in the amount of $500 per month beginning on October 1, 1986, and a like amount on the first day of November, December and January 1987. All payments were to be made through the Dallas County Child Support Office.

Father paid the sums due under the September order and further paid the sum of $500 on February 1, 1987, at which time he stopped making child support payments. The minor son remained with Father and the minor daughter stayed with Mother without further court involvement until the summer of 1988. In June 1988, Mother filed her first motion to enforce the child support order requesting that Father be held in contempt for failure to pay child support, a child support arrearage be con-

firmed, a money judgment be rendered on the unpaid support, and an order be entered for automatic wage withholding.[1] This motion was amended and supplemented a number of times throughout the summer and fall of 1988 as the alleged arrearages increased. In addition, Mother filed a motion to modify child support asserting that the needs of the minor daughter had increased and, therefore, Father should be required to pay a larger amount of child support. In response to Mother's pleadings, Father filed a number of motions which requested, among other things, a hearing on his 1986 motion to modify conservatorship. Alternatively, Father sought certain specified periods of visitation with the minor daughter. A hearing was held on all of the pending motions and an order was entered which:

a. retained Mother as the sole managing conservator of the minor daughter, awarded Father certain specific periods of visitation, and ordered him to pay all transportation costs in connection with exercising visitation;

b. ordered Father to pay to Mother the sum of $536 per month as child support on the 15th day of each month through a Guardian Ad Litem program, with Father paying the monthly Ad Litem fee;

c. awarded Mother a money judgment in the amount of $10,000 for child support arrearages that accrued from January 1, 1987 through January 1, 1989; and

d. awarded Mother's attorneys a judgment against Father in the amount of $11,898.40 for legal services rendered in connection with the action.

Father is appealing this order.

### ENFORCEABILITY OF CHILD SUPPORT ORDERS

■ In the first two points of error, Father contends that the trial court erred in granting a money judgment for child support arrearages because the entry of the temporary orders relieved him of the legal obligation to pay child support under the

1. The minor son turned eighteen in July 1988.

1982 decree and, further, the 1982 decree was vague and indefinite and therefore would not support a money judgment. We disagree with Father's contentions.

In arguing that the entry of the temporary orders relieved him of the obligation to pay child support, Father points out that the 1982 decree provided that child support shall continue "until the date such child has reached the age of eighteen (18) years or ... until further orders of this Court." Father asserts that the entry of the temporary orders were "further orders of the court" and that the September order self-destructed on January 1, 1987, and did not refer back to the 1982 decree. Thus, he argues that his child support obligations ceased on January 1, 1987. We note initially that Father presents only general arguments to support his theory. We have not been able to locate any cases directly on point; however, parallels can be drawn to establish that a temporary order with no subsequent final judgment cannot invalidate a child support obligation contained in a prior final decree of divorce.

■ Typically, a temporary order expires with the entry of a final judgment. *Coleman v. Texas State Dep't of Welfare,* 562 S.W.2d 554, 556 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.). Also, a temporary order regarding custody must not have the effect of a final adjudication of custody. *Young v. Martinez,* 685 S.W.2d 361, 363 (Tex.App.—San Antonio 1984, no writ). Thus, a temporary order, on its own, cannot function as a final disposition on an issue. A subsequent final divorce decree does not nullify a temporary order with regard to child support due up to the time of the decree. However, a final decree does supersede such a prior temporary order with regard to future child support. *Ex parte Shaver,* 597 S.W.2d 498, 500 (Tex.Civ.App.—Dallas 1980, orig. proceeding). Further, in a case that closely parallels the one at bar, it has been held that a subsequent temporary order reducing child support for a time did not nullify the original divorce decree. *See Myrick v. Myrick,* 478 S.W.2d 859, 861

(Tex.Civ.App.—Houston [1st Dist.] 1972, writ dism'd). In *Myrick*, the father applied for a reduction of his child support payments and the trial court entered an order providing that he would pay a reduced amount for nine months, at which time he would resume payments in accordance with the original decree. The appellate court held this order to be a temporary order with the original decree being in effect at the end of the period of reduced payments. The consensus of all of the cases is that a temporary order shall not supersede a final judgment once the temporary order has expired. For these reasons, we hold that the temporary orders which were entered lasted only for a limited time and, upon their expiration, Father's child support obligations resumed under the 1982 decree.

▉ Alternatively, Father argues that the 1982 decree will not support a money judgment because it is ambiguous and vague, citing as authority *Rovner v. Rovner*, 778 S.W.2d 905 (Tex.App.—Dallas 1989, writ requested). The 1982 decree provides in pertinent part:

> IT IS DECREED that JACK LAWSON COKE, JR. pay to SALLY SUMMERS COKE, child support in the amount of Five Hundred Dollars ($500.00) per month, per child, in two equal installments per month with the first payment being due and payable on the fifteenth day of May, 1982, and a like payment being due and payable on each first and fifteenth day of the month thereafter until the date such child has reached the age of eighteen (18) or shall have otherwise been emancipated, or until further orders of this Court.

Father asserts that the 1982 decree purports to order child support payments for children over the age of eighteen years and even "purports to automatically modify itself without any relationship to the factual context of the parties involved." Further, Father contends that the order could be read to expire on June 15, 1982. We disagree with Father's contentions that the order is vague and ambiguous.

▉ It is true that the terms of the order, judgment, or decree which the court seeks to enforce must be clear, specific, unambiguous, and unequivocal. The person bound by the order or judgment must have the means to know exactly what duties or obligations are imposed upon him and every order must meet the standards set forth in *Ex parte Slavin*, 412 S.W.2d 43 (Tex.1967). The specificity of the terms of the order is tested by the four corners of the order, by the express language of the terms themselves, and the meaning cannot depend upon clarification or interpretation at future hearings or otherwise. *Ex parte Glover*, 701 S.W.2d 639 (Tex.1985). However, the order need not be rife with superfluous terms and specifications adequate to counter any flight of fancy a person may imagine in order to declare it vague. *Ex parte McManus*, 589 S.W.2d 790, 793 (Tex. Civ.App.—Dallas 1979, orig. proceeding). We hold that all of the items were clear and specific and require no explanation, particularly since neither of the children had attained the age of eighteen during the period in which the child support arrearage was established. Because we hold that the 1982 decree is not vague or ambiguous, it is unnecessary to address Father's *Rovner* argument.

To further support his position that the child support obligation is not lawfully enforceable, Father submits that, when the 1982 decree is considered in conjunction with the "further temporary orders," an interpretive quagmire is created that is so unclear, equivocal, and lacking specificity that no child support obligation survives. Father points out that the trial judge acknowledged being confused; thus, clearly the orders are unenforceable. We note initially that Father does not provide any authority to support this theory. We agree that this case presents an unusual situation where a motion to modify is allowed to remain on the court's docket for years without any intervention. We also agree that the problem is compounded by the entry of a temporary order which expired by its own terms within a four month period. However, it is clear that Father was ordered to pay the sum of $500 per month, *per child*, under each of the orders in question and that one child remained with Moth-

er during the entire period of time. Thus, Father's obligation continued for the one child throughout the relevant period.

■ As a final argument dealing with enforceability, Father asserts in the third point that the granting of a money judgment for child support arrearages was improper because it was based upon purported copies of orders that were not properly before the trial court. Prior to the trial on the merits, the original trial court's jacket, which contained all of the orders, correspondence, pleadings, and the docket sheet, disappeared. In addition, copies of all of the orders in question were removed from the trial court's Minute Book. The trial court thus had to reconstruct a file by obtaining copies of the orders from Mother's counsel. On appeal, Father cites rule 77 of the Texas Rules of Civil Procedure and asserts that the introduction of the documents was not done in compliance with the rule. Thus, he argues that the trial court erred in entering judgment based upon such evidence. We hold that Father has waived his objection to the duplicate file.

At the time each of the orders in question were offered into evidence, Father objected only on the basis that "the copies were uncertified." The law is clear that, on appeal, a party will be confined to the grounds made at the trial court level. A party cannot change or enlarge the objection on appeal. *Perez v. Baker Packers*, 694 S.W.2d 138, 141–42 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). If a party raises an objection on appeal that is not raised in the trial court, such party waives the objection. *Lade v. Keller*, 615 S.W.2d 916, 919 (Tex.App.—Tyler 1981, no writ).

■ Further, we find Father's argument to be without merit because it ignores rules 1003 and 1004 of the Texas Rules of Civil Evidence. Rule 1003 states that, unless there is doubt about the authenticity of the original or it would be unfair to admit the duplicate, the copy is "admissible to the same extent as an original." TEX.R.CIV.

EVID. 1003. Under rule 1004, an original document is not required if the original is lost or destroyed without the fault of the proponent. TEX.R.CIV.EVID. 1004. Copies are admissible if "there is a reasonable account for [the originals'] absence or if there is no question of their authenticity." *Silva v. State*, 635 S.W.2d 775, 777 (Tex. App.—Corpus Christi 1982, pet. ref'd). Father testified that as far as he could tell, the copies were true duplicates of the originals. Thus, we hold that the admission of the copies where the originals were lost was appropriate. *See Centennial Bonding Agency v. State*, 705 S.W.2d 865 (Tex. App.—Fort Worth 1986, no writ) (bond receipt was destroyed and a copy was admissible). Having found all of Father's arguments concerning the enforceability of the support orders to be without merit, we overrule points one, two, and three.

## FAILURE TO ALLOW A COMPLETE HEARING

In points four, five, six, eight, nine, and thirteen, Father complains that the trial court erred in failing to allow him to present evidence in defense to Mother's allegations and, thus, he was denied due process and equal protection under the law. The statement of facts reflects that the only witnesses to testify at the trial on the merits were Father and Mother's attorney. Following the questions by Mother's counsel, Father began testifying. Because of the inability to interpose objections, the trial court required Father to proceed in a question and answer format.[2] When Father voiced his concern that he had not yet had an opportunity to make his presentation of his side of the case, the trial judge made the following statement:

> [THE COURT] At this time [mother] is putting on [her] case. I'll give you an opportunity to put on your case.

Mother's counsel thereafter asked a number of additional questions, at which point there was a recess in the proceedings. Once the record resumed, the trial judge made the following statements into the record:

---

**2.** Father, an attorney, was participating pro se.

[THE COURT] Okay. For purposes of the record, I did discuss with [mother's counsel] and Mr. Coke acting pro se, that this Court would be willing to find Mr. Coke in contempt based on the testimony, and giving him credit for offsets for the amount of money that he should have paid for the boy but has provided in support by having the boy live with him, I arrived [sic] an arrearage figure of $10,000.00.

I believe that there are some problems with the contempt that I have previously voiced, problems with exactly which order we're under and, quite frankly, I don't know how the Court of Appeals would rule. If I do hold him in contempt, as I visited with [mother's counsel] and Mr. Coke, I run the risk of causing a writ of habeas corpus to be issued and the $10,000.00 arrearage might be wiped out. I wanted [mother's counsel] to discuss that with his client and let her have an opportunity to make the decision whether or not she wished to take that risk. It is my understanding she has made an election and decided to take a judgment instead; is that correct?

 \* \* \* \* \* \*

[THE COURT] Okay. I will set the child support in accordance with the Supreme Court guidelines, based on Mr. Coke's testimony as to what his income is, which I've calculated it and it's $536.00 a month, I believe. And I will order him to pay the transportation for the monthly visits.

With regard to visitation, I've already given you the visitation schedule which will be standard Dallas County with the changes that I've given you. And [sic] will take testimony on attorney's fees.

It is also my understanding that Mr. Coke wishes to make a statement to the Court as to why he did not follow—why he acted in a manner different than what the court orders reflect that he should have acted.

Thereafter, Father made statements concerning a purported oral agreement he had with Mother concerning future child support. Once Father concluded his statements, the trial court heard testimony concerning the attorney's fees. After allowing Father and Mother to make additional statements into the record, the trial judge announced the ultimate ruling.

■ Father is correct that fundamental fairness dictates that a party must be given a reasonable opportunity to be heard on the merits of his case. *Ragsdale v. Progressive Voters League*, 743 S.W.2d 338, 345 (Tex.App.—Dallas 1987, no writ). However, the record does not reflect that Father attempted to put on any evidence which the trial court disallowed, nor did he object to what appears to be a rather abrupt ruling during the middle of the trial. Thus, Father has waived his right to complain on appeal. Rule 52 of the Texas Rules of Appellate Procedure provides that in order to preserve a complaint for review, a party must present to the trial court a timely request, objection or motion, stating the grounds for the ruling he desires the court to make. Further, the party is required to obtain a ruling on the request, objection, or motion. Tex.R.App.P. 52(a).

■ The excluded evidence that Father complains of on appeal would not have been admissible, in any event. Part of the evidence that Father desired to introduce concerned this alleged oral agreement with Mother. Father stated to the court and asserted in his motion for new trial and in his appellate brief that he and Mother, both attorneys, made an oral agreement that each parent would support the child residing in their respective homes. Mother, in her statement to the court, disputed the existence of the oral agreement. Assuming, without deciding, that an oral agreement did exist, such agreement would be void both as against public policy and because it violates rule 11 of the Texas Rules of Civil Procedure. Tex.R.Civ.P. 11. It is clear that a contract between parents to reduce child support without court approval is void as against public policy. *Rogers v. Griffin*, 774 S.W.2d 706, 707 (Tex.App.—Texarkana 1989, no writ). Even if Mother and Father were acting as attorneys, pro se, their agreement must comply with rule

11. *Dehnert v. Dehnert*, 705 S.W.2d 849, 851 (Tex.App.—Beaumont 1986, no writ).

Rule 11 states, "no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." TEX.R. CIV.P. 11. The record clearly establishes that, if an agreement ever existed, the terms were neither reduced to writing nor filed with the court. The moment the existence of an oral contract between parties touching a suit is contested, rule 11 precludes further examination of the alleged agreement. *See Kennedy v. Hyde*, 682 S.W.2d 525, 529, 530 (Tex.1984). Thus, there can be no error in excluding the introduction of testimony concerning this alleged oral agreement.

 Father further complains that he was not allowed to present evidence that he was not able to pay the money judgment nor was he allowed to present evidence of Mother's financial condition. Here again, we note that Father did not offer any testimony in this regard nor did he object to the trial court's action of curtailing the testimony and entering a ruling. In the event that Father had offered same, this particular testimony would have been irrelevant and inadmissible in so far as the money judgment was concerned. Because Mother declined to pursue the contempt motion against Father, the trial court faced only a motion to reduce unpaid child support to a money judgment. Where there is only a motion to recover a money judgment, the owing party's ability to pay is irrelevant. *Grasberger v. Grasberger*, 713 S.W.2d 429, 431 (Tex.App.—Houston [1st Dist.] 1986, writ dism'd). Mother's financial condition relative to Father's is not only immaterial, but the introduction of such evidence might have been prejudicial in this suit for a money judgment. *Block v. Waters*, 564 S.W.2d 113, 115 (Tex.Civ.App.—Beaumont 1978, no writ). Thus, the trial court did not err in failing to allow Father to present evidence of the respective financial conditions regarding the motion to reduce un-

paid child support to a money judgment. Points four, five, six, eight, nine, and thirteen are overruled.

## INCREASE IN CHILD SUPPORT AMOUNT

In the seventh point of error, Father argues that the trial court did not follow the Texas Supreme Court Child Support Guidelines [3] in setting his child support obligation at $536 per month. Father contends that the trial court did not comply with rule 7 of the Guidelines because no "proper" findings of fact were filed by the trial court as required in the rule. Rule 7 required that certain findings be stated upon written request, no later than ten days after the signing of the child support order. The court was to find the amount of net resources per month available to obligor and obligee; the percentage applied under rule 5 to determine the child support; and the amount of support per month computed by applying rule 5 to the Guidelines. The record reflects that the trial court included each of these findings in its findings of fact. The only item not included was the determination of the Mother's (as the obligee) net resources. Rule 4 of the Guidelines provided, however, that the trial court should only consider an obligee's net resources if they exceeded $1,600.00 per month. Although Mother was present at the trial, Father did not question Mother concerning her financial resources nor did he indicate any desire to do so. Thus, there was no evidence suggesting that Mother's net resources exceeded $1,600.00 per month.

Father also argues that the process by which the trial court reached the amount of child support ordered is not determinable from the findings of fact or conclusions of law. The findings filed by the trial court clearly state the net resources of Father and the percentages applied to arrive at the child support obligation. Father's tax returns for the relevant years, as well as his current income information, were admitted into evidence. Rule 3 of the Guidelines

---

3. Superseded by legislative guidelines September 1, 1989.

required the trial court to consider such financial information when calculating the net resources. We hold that the findings of fact and conclusions of law filed by the trial court comply with the Guidelines and that the trial court appeared to base the calculations on the financial information which was admitted into evidence. Therefore, we overrule the seventh point of error.

## AWARD OF ATTORNEY'S FEES

█ In his tenth point of error, Father complains that the trial court erred in granting a judgment of $11,898.40 for attorney's fees, because the amount is unreasonable, unconscionable, and unlawfully punitive in effect. The record reflects that Mother's counsel testified concerning his qualifications, the number of hours expended, his hourly rate, the costs, and the sums incurred because of the hours expended by paralegals. In addition, counsel presented a summary of the services rendered reflecting that a fee of $11,898.40 was generated. Father asked a few questions about particular entries and then concluded with the statement: "I would say that $250.00 an hour, I think, is high but that's the reason he's where he is and I guess [sic] where I am." We note that Father does not challenge the sufficiency of the evidence to support the award, but rather merely complains that it is too high. Here again, Father did not introduce any evidence to rebut counsel's testimony concerning the amount of the fee. Thus, the trial court based its decision upon uncontradicted testimony and, under the record of this case, we hold that the trial court did not commit any error in rendering judgment for the attorney's fees. An appellate court's function is not to retry the case. It is the prerogative of the fact finder to weigh the evidence and to judge the credibility of the witnesses. A court of appeals is not to pass on the credibility of witnesses nor to substitute its findings for those of the trier of fact. *Blanco v. Garcia,* 767 S.W.2d 896, 897 (Tex.App.—Corpus Christi 1989, no writ); *Reynolds v. Kessler,* 669 S.W.2d 801, 807 (Tex.App.—El Paso 1984, no writ). The tenth point is overruled.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

█ The remaining issues to be disposed of are contained in points eleven and twelve, wherein Father asserts that the trial court erred in failing to enter proper and appropriate findings of fact and conclusions of law and, specifically, in refusing to enter those he requested. Father contends that the findings of fact and conclusions of law filed by the trial court are devoid of any basic underlying factual findings and are nothing more than statements of the ultimate factual conclusions of the trial court without any path for this Court to determine the course followed by the trial court or to test the trial court's conclusions. Finally, Father asserts that the trial court erred in refusing and ignoring his request for additional findings.

The record reflects that the order being appealed was signed by the trial judge on May 23, 1989, and Father timely filed a request for findings of fact and conclusions of law on May 30, 1989. In response to Father's request, the trial judge signed and filed the findings of fact and conclusions of law on June 21, 1989. Five days later, Father filed his request for additional and amended findings. A review of the trial court's findings of fact and conclusions of law reveals that they sufficiently dispose of the subject matter, venue, jurisdiction, parties, and issues in this case. While they may not be as complete as Father desires, they are dispositive of each of the ultimate controlling issues to be decided by the trial court. TEX.R.CIV.P. 296, 297; *Lettieri v. Lettieri,* 654 S.W.2d 554, 556 (Tex.App.—Fort Worth 1983, writ dism'd). As to the complaint that the trial court erred by refusing to make the additional findings, we find such to be without merit. We hold that Father's requested additional findings and conclusions were either evidentiary, conflicted with the original findings and conclusions, or had no support in the evidence. While a trial court may file additional findings and conclusions if properly requested, it is not required to do so if the requested findings are evidentiary matters,

as opposed to ultimate or controlling issues, or on findings that are in conflict with original findings. *See In the Estate of Ross*, 672 S.W.2d 315, 318 (Tex.App.—Eastland 1984, writ ref'd n.r.e.), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1844, 85 L.Ed.2d 143 (1985). Points eleven and twelve are overruled.

The trial court's judgment is affirmed.