Affirmed, in Part, and Reversed and Rendered, in Part, and Majority and
Concurring Opinions filed November 14, 2002









 

Affirmed, in Part,
and Reversed and Rendered, in Part, and Majority and Concurring Opinions filed November 14, 2002.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-01-00603-CV

____________

 

JEFFREY LONDON, Appellant

 

V.

 

LETICIA LONDON, Appellee

 



 

On Appeal from the 308th
District Court

Harris County, Texas

Trial Court Cause No. 1995-51934

 



 

M A J O R I T Y   O P I
N I O N

Jeffrey London (“Jeff”) appeals the trial court=s modification order increasing his
monthly child support from $1,500 to $4,500 for his two children and awarding
$40,000 in attorney fees to his former wife, Leticia London (“Leticia”).  Leticia appeals the trial court=s modification order restricting the
children’s primary residence to Harris County and awarding Jeff the sole right
to make education decisions for the children and more periods of
possession.  We affirm, in part, and
reverse and render, in part.








                                                             I. 
Background

Jeff and Leticia’s final decree of
divorce was signed on December 27, 1995. 
Jeff filed a petition to modify the parent-child relationship in which
he sought the right to establish the children’s primary residence, or, in the
alternative, modification of his periods of possession to correctly reflect the
actual possession being exercised by the parties, and an extension of the
restriction regarding the children’s primary residence as set forth in the
divorce decree.  Jeff also sought the
sole right to make education decisions for the children.  Leticia subsequently filed a petition to modify
the parent-child relationship seeking an increase in child support and removal
of the same restriction regarding the children=s primary residence which Jeff sought
to extend.  

The issues concerning the right to establish the children’s
primary residence and the restriction of the children’s primary residence were
tried to a jury.  The jury found Leticia
should have the exclusive right to establish the primary residence of the
children, but that the children’s primary residence should be restricted to “Harris
County and any contiguous counties.”  The
issues concerning child support, attorney fees, periods of possession, and the
right to make education decisions were tried to the court.  The trial court awarded attorney fees to
Leticia in the amount of $40,000 and increased the amount of monthly child
support from $1,500 to $4,500.  The court
awarded Jeff the sole right to make the decisions regarding the children=s education and additional periods of
possession.  Although the jury found the
children’s primary residence should be restricted to “Harris County and any
contiguous counties,” the trial court stated in its order that their primary
residence was restricted to Harris County. 

                                                         II. 
Limited Appeal








As a preliminary matter, Leticia asserts Jeff has not
presented a sufficient record on appeal because he requested only a partial,
rather than a complete, reporter’s record for his appeal.  The rules of appellate procedure authorize
limited appeals.  Furr=s Supermarkets, Inc. v. Bethune, 53 S.W.3d 375, 377 (Tex. 2001)
(citing Tex. R. App. P. 34.6(c)(1)).  If the appellant requests a partial reporter’s
record, he must include in the request a statement of  the points or issues to be presented on appeal
and will accordingly be limited to those points or issues.  Tex.
R. App. P. 34.6(c)(1).  Our review
of the record shows Jeff complied with the rule for filing a limited appeal by
filing with his request for a partial reporter=s record a statement of the issues he
intended to present in this appeal.  For
the issues raised in Jeff’s appeal, we must presume the partial reporter’s
record “‘constitutes the entire record for purposes of reviewing the stated
points or issues.’”  Furr’s
Supermarkets, Inc., 53 S.W.3d at 377 (quoting Tex. R. App. P. 34.6(c)(4)). 
“This presumption applies even if the statement includes a point or
issue complaining of the legal or factual insufficiency of the evidence to
support a specific factual finding identified in that point or issue.”  Tex.
R. App. P. 34.6(c)(4).  

A review of the record shows that while Leticia filed her own
notice of appeal, she  did not file a
notice of limited appeal stating the issues she intended to present on
appeal.  Tex. R. App. P. 34.6(c)(1). 
Therefore, because Leticia did not follow the procedure provided in Tex. R. App. P. 34.6(c)(1), she is not
entitled to the presumption that the partial record constitutes the entire
record for the issues she raised in her appeal. 
Leticia, moreover, did not request the remaining portions of the
reporter’s record.  If the appellant
fails to present a complete reporter=s record on appeal, the court of
appeals must presume the omitted portions are relevant and support the trial
court’s judgment.  Feldman v. Marks,
960 S.W.2d 613, 614 (Tex. 1996). 
Therefore, in considering Leticia=s issues on appeal, we must presume
the omitted portions of the record support the judgment of the trial
court.  

                                                           III. 
Jeff’s Appeal

                                                              A.  Child Support








In his thirteenth through eighteenth issues, Jeff claims the
trial court abused its discretion in increasing his monthly child support
payments from $1,500 to $4,500 because  the
evidence is legally and factually insufficient to support such an
increase.  A trial court’s child support
order will be overturned only upon a showing of an abuse of discretion.  Rodriguez v. Rodriguez, 860 S.W.2d
414, 415 (Tex. 1993).  A trial court
abuses its discretion when its ruling is arbitrary, unreasonable, or without
reference to any guiding rules or legal principles.  K-Mart Corp. v. Honeycutt, 24 S.W.3d
357, 360 (Tex. 2000).  Under the abuse of
discretion standard, the legal and factual sufficiency of the evidence are not
independent grounds of error, but are merely factors in assessing whether the
trial court abused its discretion.  Beaumont
Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991); Zieba v. Martin,
928 S.W.2d 782, 786 (Tex. App.CHouston [14th Dist.] 1996, no writ).  

We review the trial court=s findings of fact for legal and
factual sufficiency of the evidence by the same standards applied in reviewing
the evidence supporting a jury’s finding. Catalina v. Blasdel, 881
S.W.2d 295, 297 (Tex. 1994).  When
reviewing the legal sufficiency of the evidence, we consider only the evidence
and inferences tending to support the trial court’s finding, disregarding all
contrary evidence and inferences.  Bradford
v. Vento, 48 S.W.2d 749, 754 (Tex. 2001). 
A “no evidence” point will be sustained if there is no more than a
scintilla of evidence to support the finding. 
Minyard Food Stores, Inc. v. Goodman, 80 S.W.3d 573, 577 (Tex.
2002).  In conducting a factual
sufficiency review, we must examine the entire record, considering both the
evidence in favor of, and contrary to, the challenged finding, and set aside
the finding only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. 
Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 406B07 (Tex. 1998).  

The trial court may modify a prior child support order if “the
circumstances of the child or a person affected by the order have materially
and substantially changed since the date of the order’s rendition.”  Tex.
Fam. Code Ann. ' 156.401(a)(1) (Vernon Supp. 2002).  Jeff claims there was no evidence regarding
the financial circumstances of the children or  the parties affected by the order at the time
the order was entered.  The trial court
did not make a finding on whether there was a substantial change in
circumstances as to the children or either Leticia or Jeff as a basis for the
modification in child support.[1]  

 








In determining whether there has been a material and
substantial change in circumstances, it is well settled that the trial court
must compare the financial circumstances of the children and the affected
parties at the time the existing support order was entered with their
circumstances at the time the modification is sought.  Tucker v. Tucker, 908 S.W.2d 530, 532
(Tex. App.CSan Antonio 1995, writ denied); Hammond
v. Hammond, 898 S.W.2d 406, 407B08 (Tex App.CFort Worth 1995, no writ); Penick
v. Penick, 780 S.W.2d 407, 408 (Tex. App.CTexarkana 1989, writ denied); Liveris
v. Ross, 690 S.W.2d 60, 61 (Tex. App.CHouston [14th Dist.] 1985, no
writ).  Without evidence of the
circumstances at the time the existing support order was entered, the trial
court cannot determine whether there has been a material and substantial change
in the circumstances of the children or the parties affected by the order.  Swate v. Crook, 991 S.W.2d 450, 453
(Tex. App.CHouston [1st Dist.] 1999, pet.
denied); Liveris, 690 S.W.2d at 61. 
As the movant, it was Leticia=s burden to show the requisite
material and substantial change in circumstances since the entry of the most
recent order.  In re Striegler,
915 S.W.2d 629, 635 (Tex. App.CAmarillo 1996, writ denied); Holley v. Holley, 864
S.W.2d 703, 706 (Tex. App.CHouston [1st Dist.] 1993, writ denied).








Leticia presented no evidence of the financial circumstances
of the children, her, or Jeff at the time the support order was entered in 1995
in the divorce decree.  At most, Leticia
testified about an interest in a joint venture she received in her divorce,
which was worth about $1,000,000. 
Leticia testified that Jeff informed her the joint venture assets were
being sold and she “should be receiving a check very soon.”  Leticia did not receive any money from the
sale of the joint venture assets and “on the eve of the trial in this case,”
she found out the joint venture was not worth anything.  Leticia stated she was counting on that money
to assist her in supporting the children. 


Leticia, however, never testified she had been relying on or
otherwise receiving any income from the joint venture.  Moreover, Leticia did not present any other
evidence of the financial circumstances of either her or the children or the
children=s needs at the time of the divorce
when the child support order was entered. 
Because there is no evidence of the financial circumstances of the
children or the affected parties at the time of the prior child support order,
the trial court abused its discretion in increasing Jeff’s monthly child
support obligation.  Jeff’s thirteenth
through eighteenth issues are sustained. 


                                                              B.  Attorney Fees

In his first through twelfth issues, Jeff claims the trial
court abused its discretion in awarding attorney fees in the amount of $25,000
to Leticia=s attorney, Walter Mahoney, and
attorney fees in the amount of $15,000 to Leticia because the evidence is
legally and factually insufficient to support such awards.  








The issue of attorney fees was raised at a hearing on the
motion in limine prior to the jury portion of the trial.  Leticia sought to exclude the testimony of
Jeff’s expert witness, who was to testify on the issue of the effects of
relocation on children, on the ground that she had not been provided with an
expert report.  Jeff, in turn, sought to
exclude testimony by Leticia’s attorney, Walter Mahoney, because, with the
exception of Mahoney’s resume and contract with Leticia establishing a
nonrefundable retainer, the underlying documents supporting Mahoney’s fees had
never been produced pursuant to Jeff’s discovery requests.  Mahoney further informed the trial court
there were no invoices because he had not billed Leticia.[2]  The trial court gave the parties a
choice:  either Jeff’s expert and Mahoney
both would be allowed to testify or neither would be allowed to testify.  When the parties could not come to an
agreement, the trial court ruled that neither Jeff’s expert nor Mahoney would
be allowed to testify.  

In proceedings before the trial court on August 29, 2000,
Leticia again raised the issue regarding her request for attorney fees.  The trial court ruled attorney fees with
regard to the attorney ad litem would be addressed, but attorney fees for
Leticia would not be addressed for the same reason as before, i.e., because she
had not produced the documentation underlying her claim for attorney fees.  The trial court, nonetheless, awarded
attorney fees in the amount of $25,000 to Mahoney, and $15,000 to Leticia for
attorney fees she had already paid.  

                                                                1.  Family Code

Under the Texas Family Code, it is within the trial court’s
discretion to award reasonable attorney fees in a suit affecting the
parent-child relationship.  Tex. Fam. Code Ann. ' 106.002 (Vernon Supp. 2002); Bruni
v. Bruni, 924 S.W.2d 366, 368 (Tex. 1996). 
Attorney fees rendered in a suit affecting the parent-child relationship
may be awarded as necessaries to the children. 
Roosth v. Roosth, 889 S.W.2d 455, 456 (Tex. App.CHouston [14th Dist.] 1994, writ
denied); Daniels v. Allen, 811 S.W.2d 278, 280 (Tex. App.CTyler 1991, no writ).  This is premised on the notion that a parent
has an obligation to support his minor children.  Roosth, 889 S.W.2d at 456; Daniels,
811 S.W.2d at 280; Creavin v. Moloney, 773 S.W.2d 698, 702B03 (Tex. App.CCorpus Christi 1989, writ denied). 

During the proceedings before the
trial court, Leticia introduced into evidence a financial information sheet,
which included: 








Attorneys’ Fees Paid to Date  

Lynne Holder             $8,345.49

Walter Mahoney        $5,000.00

Dennis Kelly              $1,250.00

Warren Cole                 $400.00

Bruce Kessler               $250.00

John Pavlas                   $350.00

Total                          $15,595.49

Leticia=s financial information sheet also included: 

Unpaid Attorney’s Fees to Date  

Walter Mahoney        $20,581.50

Linda Thompson        $1,000.00

Lynne Holder $8,770.45

Total                          $31,770.45

Leticia testified she owes more than
$45,000 in attorney fees, which included about $31,000 in unpaid fees and about
$15,000 in fees which she had charged to her credit cards and, therefore, had
not been paid.  Leticia testified she has
to sell her house because she has no other means by which to pay her attorney
fees.  








Jeff complains there was no evidence
of the hourly rate of any of Leticia’s attorneys, the hours they expended on
her claim for increased child support, or the reasonableness and necessariness
of the fees.  Leticia argues the fact
that the trial court awarded attorney fees as child support, alone, is
sufficient without any evidence to support the award.  Contrary to Leticia’s contention, the trial
court’s award of attorney fees as child support does not dispense with the
requirement that such fees be supported by evidence.  See, e.g., In re H.S.N., 69 S.W.3d
829, 835 (Tex. App.CCorpus Christi 2002, no pet.) (finding no abuse of discretion
in award of attorney fees where trial court heard evidence that fees, which
were “incurred in relation to the child and are in nature of child support,”
were reasonable and necessary); Roosth, 889 S.W.2d at 456 (holding,
after review of evidence, that services performed by appellee=s attorneys were related to needs of
children); Daniels, 811 S.W.2d at 280 (observing that although issues on
appeal were whether appellee had pleaded for attorney fees and whether those
fees were incurred as “necessaries” for child, evidence supported award of
attorney fees).[3]  

Other than what is contained in her
financial information sheet, Leticia presented no evidence concerning attorney
fees such as the hourly rate of each attorney, the hours spent on her case by
each attorney, or the reasonableness and necessariness of the fees of each
attorney who worked on her case.  Without
any such evidence, the trial court abused its discretion in awarding attorney
fees under the Family Code and as necessary support to the children.  

                                      2.  Texas Civil Practice and Remedies Code








The trial court also based its award
of attorney fees on Chapter 38 of the Civil Practice and Remedies Code.  Jeff asserts the Texas Civil Practice and
Remedies Code cannot serve as a proper basis for the award of attorney fees in
a suit affecting the parent-child relationship. 
Section 38.001 sets forth the claims for which a party may recover
reasonable attorney fees: (1) rendered services; (2) performed labor; (3)
furnished material; (4) freight or express overcharges; (5) lost or damaged
freight or express; (6) killed or injured stock; (7) a sworn account; or (8) an
oral or written contract.  Tex. Civ. Prac. & Rem. Code Ann. ' 38.001 (Vernon 1997).  There is a rebuttable presumption that “the
usual and customary attorney fees for a claim of the type described in Section
38.001 are reasonable.”  Tex. Civ. Prac. & Rem. Code Ann. ' 38.003 (Vernon 1997).  In the absence of expert testimony, the trial
court may take judicial notice of usual and customary attorney fees and the
contents of its case file without receiving any further evidence in a
proceeding before the court.  Tex. Civ. Prac. & Rem. Code Ann. ' 38.004 (Vernon 1997); Budd v. Gay,
846 S.W.2d 521, 524 (Tex. App.CHouston [14th Dist.] 1993, no writ).  

The First Court of Appeals has
addressed this issue.  Valdez v.
Valdez, 930 S.W.2d 725 (Tex. App.CHouston [1st Dist.] 1996, no
writ).  Valdez involved a suit to
modify the parent-child relationship in which the father was awarded attorney
fees.  Id. at 727.  The father argued on appeal that the award of
attorney fees should be affirmed based on Section 38.004 of the Texas Civil
Practice and Remedies Code, which allows the trial court to take judicial
notice of usual and customary attorney fees. 
Id. at 732.  The court of
appeals rejected that argument and, instead, held section 38.004 did not permit
the trial court to take judicial notice of the reasonableness of
attorney fees.  Id.  








The Valdez court observed that
section 38.003 establishes a presumption that “‘the usual and customary
attorney’s fees for a claim of the type described in Section 38.001 are
reasonable.’”  Id. (quoting Tex. Civ. Prac. & Rem. Code Ann. ' 38.003).  An action to modify the parent-child
relationship, however, is not the type of claim that falls within section
38.001.  Id.  Section 38.004 does not address the
reasonableness of attorney fees, only “unusual and customary” attorney
fees.  Id.  The Valdez court concluded, therefore,
that because section 38.004 does not address the reasonableness of attorney
fees, it cannot support the trial court’s decision to take judicial notice of
the reasonableness of the amount of attorney fees and section 38.003 cannot be
used in any action not listed in section 38.001.  Id. at 733 (citing Richards v. Mena,
907 S.W.2d 566, 573 (Tex. App.CCorpus Christi 1995, writ dism=d by agr.)) (holding section 38.004
cannot be used to justify reasonableness of attorney fees and section 38.003
cannot be used outside of 38.001 action)); see also Lesikar v. Rappeport,
33 S.W.3d 282, 307 (Tex. App.CTexarkana 2000, pet. denied) (finding because plaintiff=s action was not one of those
included in section 38.001, plaintiff could not benefit from any presumption
allowed by statute); Gorman v. Gorman, 966 S.W.2d 858, 866 (Tex. App.CHouston [1st Dist.] 1998, pet.
denied) (stating trial court may only take judicial notice of reasonable and
necessary attorney fees in claims described in section 38.001).[4]  

Leticia argues that “when attorney
fees are based upon a written contract as in this case the court can also take
judicial notice of the fees incurred.” 
Leticia has cited no authority to support the proposition that an action
to increase child support is an action on a written contract.  Leticia is not entitled to a presumption of
reasonableness under section 38.003 because this is not an action listed under
section 38.001.  While section 38.004
permits the trial court to take judicial notice of usual and customary fees and
the contents of its file without receiving further evidence on the issue, it
does not allow the trial court to take judicial notice of the reasonableness of
attorney fees.  Because Chapter 38 does
not provide a basis for the trial court’s award of attorney fees to Leticia,
the trial court abused its discretion in awarding attorney fees on the basis of
judicial notice.[5]  Jeff=s first through twelfth issues are
sustained.  

IV. 
Leticia’s Appeal

A. 
Jeff’s Possession of Children

 In her first issue, Leticia claims the trial court
abused its discretion in awarding Jeff more periods of possession when she was
awarded the right to establish the primary residence of the children.  Leticia complains that awarding Jeff more
periods of possession renders her right to establish the primary residence of
the children meaningless.  The trial
court may modify a possession order if (1) the circumstances of the child or
the person affected by the order have materially and substantially changed since
the rendition of the order, or (2) it has become unworkable or in appropriate
under existing circumstances.[6]  

“Joint managing conservatorship does
not require the award of equal or nearly equal periods of physical possession
of and access to the child to each of the joint conservators.”  Tex.
Fam. Code Ann. '153.135 (Vernon 1996); see also Norris v. Norris, 56
SW.3d 333, 344 (Tex. App.CEl Paso 2001, no pet.) (stating public policy does not
mandate children live with each parent 50 percent of time).  Under the joint conservator scheme, both
conservators share joint responsibility for the child.  Dennis v. Smith, 962 S.W.2d 67, 69
(Tex. App.CHouston [1st Dist.] 1997, no
pet.).  

Jeff testified that during the week
following a weekend when he did not have possession of the children, he has
them from Monday when they are let out of school until the following Wednesday
morning when they are returned to school, and during the week following a
weekend when he has had possession, he has them from Wednesday when they are
let out of school until Friday morning. 
Jeff has the children the first, third, and fifth weekends of the month
and for 30 days in the summer.  








Leticia testified that Jeff’s actual
possession of and access to the children has exceeded the standard possession
order as set forth in the divorce decree. 
The trial court made the same finding and further found that
modification of the schedule would comport with possession actually exercised
by Jeff.  Jeff’s expert recommended there
be no adjustment to the schedule that reduces the amount of time the children
spend with Jeff.  Leticia testified she
had no intention of decreasing the amount of time the children spent with
Jeff.  

Leticia has failed to challenge any
of the trial court’s findings of fact with regard to Jeff’s periods of
possession of the children.  Unchallenged
findings of fact are binding on  the
court of appeals “unless the contrary is established as a matter of law, or if
there is no evidence to support the finding.” 
McGalliard v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986).  There is no mandate that Leticia and Jeff
have an equal amount of possession.  See
Tex. Fam. Code Ann. '153.135; Norris, 56 SW.3d at
344.  The modification of the order
merely comports with the periods of possession already being exercised by
Jeff.  Because  the evidence supports the trial court’s
modification of the possession schedule, the trial court did not abuse its
discretion in awarding Jeff more access to and possession of the children.  Leticia=s first issue is overruled.  

                                                        B.  Education Decisions

In her second issue, Leticia claims
the trial court abused its discretion in granting Jeff the exclusive right to
make education decisions for the children when she was awarded the right to
establish the primary physical residence of the children.  Leticia argues that by awarding Jeff the
exclusive right to make education decisions, the trial court has negated her
right to establish the primary residence of the children.  








When appointing both parents as joint
conservators, the Family Code requires the trial court to “specify the rights
and duties of each parent regarding the child’s physical care, support, and education.”  Tex.
Fam. Code Ann. ' 153.134(b)(2) (Vernon Supp. 2002).  There is no limitation on the manner in which
the court may assign those rights.  Bailey
v. Bailey, 987 S.W.2d 206, 210 (Tex. App.CAmarillo 1999, no pet.); see also
Jenkins v. Jenkins, 16 S.W.3d 473, 483 (Tex. App.CEl Paso 2000, no pet.) (observing
list of rights and duties is not exclusive and does not define manner in which
trial court assigns or implements rights and duties).  Therefore, the trial court retains broad
discretion in crafting the rights and duties of each conservator in
effectuating the best interest of the child. 
Jenkins, 16 S.W.3d at 483.

Both children attend the elementary
school in their neighborhood.  Jeff made
arrangements for the children to attend their current school, enrolled the
older child in the gifted and talented program at school, bought the children=s uniforms, and took the children to,
and picked them up from, school on the first day.  Jeff testified as to which middle school and
high school he wants the children to attend and further stated he is willing to
consider the children attending private school if necessary.  

On the first day of school, Leticia
was returning from vacation.  Leticia
explained that when she made her vacation plans, she did not know when the
children=s school started and did not attempt
to find out.  Leticia did not make
arrangements for the children to attend their current school.  With regard to enrolling the older child in
the gifted and talented program at school, she had never inquired about the
program.  Leticia did not buy the children
uniforms or supplies before she left on vacation.  Leticia also did not attend a
school-sponsored ice cream social for students and parents.  When questioned about the possibility of
moving outside of Harris County, Leticia stated she had not looked into where
the children would attend school.  








Again, Leticia has not challenged any
of the trial court=s findings of fact with regard to Jeff=s right to make education decisions
for the children.  Unchallenged findings
of fact are binding on this court unless the contrary is established as a
matter of law or there is no evidence to support the trial court=s finding.  McGalliard, 722 S.W.2d at 696.  The evidence supports the trial court=s award to Jeff of the exclusive
right to make education decisions for the children and, therefore, the trial
court did not abuse its discretion. 
Leticia’s second issue is overruled. 


                                                       C.  Domicile Restriction

In her third issue, Leticia claims
the trial court abused its discretion in restricting the children’s primary
residence to Harris County.  The divorce
decree provided the children’s primary residence was restricted to, and the
parties were enjoined from removing the children from, “Houston, Harris County,
Texas” for the purpose of changing their primary residence until January 1,
2000, “provided that domicile will remain within a two hundred (200) mile
radius of Houston, Harris County, Texas.” 
In addition to seeking the sole right to establish the children’s
residence, Jeff, in the alternative, sought the continuation of the residency
restriction, which was to expire on December 31, 1999.  Leticia sought the removal of the 200-mile
radius residency restriction.  The jury
was asked to determine whether the children=s primary residence should be “without
regard to geographic location” or restricted to “Harris County and any
contiguous counties.”  The jury found
that primary residence of the children should be restricted to AHarris County and any contiguous
counties.@ 


Although the trial court stated in
its rendition on post judgment motion to modify that it adopted the jury’s
verdict, it nonetheless further stated “Domicile is restricted to Harris
County.”  Similarly, in its modified
order, the trial court restricted the children=s primary residence to Harris County,
Texas.  

The
Family Code states the following with regard to residential restrictions:

(b) In rendering an order appointing joint managing
conservators, the court shall:

 

(1)
designate the conservator who has the exclusive right to determine the primary
residence of the child and:

 

(A)
establish, until modified by further order, a geographic area consisting of the
county in which the child is to reside and any contiguous county thereto
within which the conservator shall maintain the child=s primary residence.

 








Tex. Fam.
Code Ann. '153.134(b)(1)(A) (Vernon Supp. 2002)
(emphasis added).  

Leticia argues the restriction
imposed by the trial court is not authorized by section 153.134(b)(1)(A), which
provides for a restriction to one county plus any contiguous counties, not to
only one county.  A review of the record
reflects that Leticia did not raise this complaint in the trial court either
orally or in writing.  Therefore, Leticia
has waived this issue on appeal.  Tex. R. App. P. 33.1.  Leticia=s third issue is overruled.  

                                                             V. 
Conclusion

Because the trial court abused its
discretion in increasing Jeff’s monthly child support obligation and in
awarding attorney fees to Leticia, that portion of the judgment is reversed and
judgment is rendered that Leticia take nothing on her claim for increased child
support and attorney fees.  The remainder
of the judgment is affirmed.  The
judgment of trial court is accordingly affirmed, in part, and reversed and
rendered, in part.

 

 

/s/        J. Harvey Hudson

Justice

 

 

 

Judgment rendered and Majority and Concurring Opinions filed
November 14, 2002.

Panel consists of Justices Hudson, Fowler, and Duggan.[7]  (Fowler, J. concurring.)

Publish C Tex. R. App. P.
47.3(b).








Affirmed,
in Part, and Reversed and Rendered, in Part, and Majority and Concur-

ring
Opinions filed November 14, 2002.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-01-00603-CV

____________

 

JEFFREY
LONDON, Appellant

 

V.

 

LETICIA
LONDON, Appellee

 



 

On Appeal
from the 308th District Court

Harris
County, Texas

Trial
Court Cause No. 1995-51934

 



 

C O N C U R R I N G   O P I N I O N

I concur fully in the court’s opinion
and write separately only to differ with the analysis used in the majority
opinion to resolve whether chapter 38 of the Texas Civil Practice and Remedies
Code can be used in this family case to support attorney’s fees. 








“Statutory provisions for the
recovery of attorney’s fees are in derogation of the common law, are penal in nature
and must be strictly construed.”  Knebel
v. Capital Nat’l Bank, 518 S.W.2d 795, 804 (Tex. 1975).  Consequently, attorney’s fees are not
recoverable unless provided for by statute or by contract between the
parties.  Dallas Cent. Appraisal Dist.
v. Seven Inv. Co.,  835 S.W.2d
75, 77 (Tex. 1992).  

Here, the Family Code specifically
provided for attorney’s fees because this was a  suit affecting the parent-child
relationship.  Tex. Fam. Code Ann. ' 106.002.  But, even though this statute was available
to Leticia London, we held that she was not able to recover any fees becauseCother than the total amounts chargedCshe did not present any evidence
regarding the hourly rate and the total amount of hours spent by the lawyers or
regarding the reasonableness and necessity of the fees.  

Leticia also claimed that she was
entitled to rely on the provisions of chapter 38 of the Civil Practice and
Remedies Code to recover fees.  That
chapter provides for recovery of attorney’s fees in eight types of claims.  A family dispute is not one of the enumerated
claims.[1]  Tex.
Civ. Prac. & Rem. Code Ann. ' 38.001.  For three reasons I believe this chapter was
not available to Leticia to recover fees. 
First, a family law dispute is not one of the listed claims.  Second, when read as a whole, it is clear
that the sections in the chapter are intended to be read together and are
intended to apply only to that chapter. 
Nothing in the chapter indicates in any way that one or more of its
subsections may be used with attorney’s fees provisions contained in unrelated
codes.  Third, reading the chapter in
this restrictive manner is consistent with the way Texas courts have read
attorney’s fee provisions.  Thus, chapter
38 was not available to Leticia.








Because provisions for attorney’s
fees are to be strictly construed, I believe Leticia was limited to the attorney’s
fee provision in the Family Code.  She
had one chance to recover attorney’s fees, and that was through the Family Code
provisions.  Consequently, I would have
held simplyCas Jeffrey London requestedCthat chapter 38 of the Civil Practice
and Remedies Code does not apply to a modification suit involving the
parent-child relationship, and that none of its sections are available to
Leticia London to support an award of fees. 
See Tex. Civ. Pac. &
Rem. Code Ann. ' 38.001B38.006. 

 

 

/s/        Wanda McKee Fowler

Justice

 

 

 

 

Judgment rendered and Majority and Concurring Opinions filed
November 14, 2002.

Panel consists of Justices Hudson, Fowler, and Duggan.[2]  (Hudson, J. Majority.)

Publish C Tex. R. App. P.
47.3(b).

 

 











[1]  Leticia argues
the issue of change in circumstances was submitted to the jury.  The issue submitted to the jury concerned
modification of possession of and access to the children.  The question submitted to the jury
asked:  

Do you
find from a preponderance of the evidence that:

1.         (a)The
circumstances of the children, or Leticia or Jeff London have materially and
substantially changed since December 27, 1995;

Or

(b)        That
the Divorce Decree has become unworkable or inappropriate under the current
circumstances;

And

2.         A
modification of the Decree would be a positive improvement for and in the best
interest of the children.

The above question tracks the language of former
Section 156.301 of the Family Code, which sets forth the grounds for
modification of possession and access. 
Act of June 19, 1999, 76th Leg., R.S., ch. 1390, ' 15, 1999 Tex. Gen. Laws 4700, repealed by Act
of June 16, 2001, 77th Leg., R.S., ch. 1289, ' 12,
2001 Tex. Gen. Laws 3111.  Therefore,
issue of change in circumstances with regard to the issue of child support was
not before the jury.  





[2]  Mahoney stated
to the court, “We are testifying as to my attorney’s fees and there are no
documents that I would rely upon to testify as to my attorney’s fees other than
those ones that have been provided.”  





[3]  There is no
abuse of discretion where an award of attorney fees is supported by the
evidence.  See, e.g., Farish v. Farish,
921 S.W.2d 538, 564 (Tex. App.CBeaumont 1996, no writ) (finding stipulation by
appellant=s counsel as to appellee=s
qualifications and reasonableness of hourly fee and appellee=s submission to trial court of itemized statements
sufficient to support award of attorney fees and, therefore, award was not
abuse of discretion); Thomas v. Thomas, 895 S.W.2d 895, 898 (Tex. App.CWaco 1995, writ denied) (finding no abuse of
discretion in award of attorney fees based on attorney=s testimony regarding time spent on motion to modify
child support order and hour rate charged); In re Pecht, 874 S.W.2d 797,
803B04 (Tex. App.CTexarkana
1994, no pet.) (finding that while evidence was presented that $7,500 would be
reasonable and necessary fee for handling appeal, no other evidence was
presented showing reasonableness of other amounts awarded for post-trial
attorney fees and, therefore, amount of attorney fees would be reduced to $7,500);
Cohen v. Sims, 830 S.W.2d 285, 290 (Tex. App.CHouston [14th Dist.] 1992, writ denied) (finding award
of attorney fees was not abuse of discretion where attorney testified as to
usual and customary fees charged in modification action, the hours expended,
and hourly rate); Coke v. Coke, 802 S.W.2d 270, 278 (Tex. App.CDallas 1990, writ denied) (finding testimony of
attorney=s qualifications, number of hours expended, hourly
rate, and summary of services sufficient to support award of attorney fees); Mycelium
v. Mycelium, 801 S.W.2d 579, 587 (Tex. App.CCorpus
Christi 1990, writ denied) (finding evidence supporting attorney fees was Aspecific,@
including testimony regarding experience and hourly rate, and testimony that
services were related to hearing and necessary to case); Anderson v.
Anderson, 770 S.W.2d 92, 97 (Tex. App.CDallas
1989, no writ) (finding no abuse of discretion where evidence supported
reasonableness of attorney fees); Power v. Power, 720 S.W.2d 683, 685
(Tex. App.CHouston [1st Dist.] 1986, writ dism=d) (finding evidence of hours spent on case, hourly
fee, and that hourly fee was reasonable supported award of attorney fees); Laviage
v. Laviage, 647 S.W.2d 758, 761 (Tex. App.CTyler
1983, no writ) (finding evidence of counsel=s hourly
rate, credentials, and expertise in family law, and records kept, prepared, and
processed, supported award of attorney fees and, therefore, trial court did not
abuse discretion in awarding attorney fees). 






[4]  Two other
courts of appeals, however, have applied sections 38.003 and 38.004 in
determining the reasonableness of attorney fees to claims not listed in section
38.001.  See Matelski v. Matelski,
840 S.W.2d 124, 130 (Tex. App.CFort Worth 1992, no writ) (involving action to enforce
and clarify divorce decree); In re Estate of Kidd, 812 S.W.2d 356, 359
(Tex. App.CAmarillo 1991, writ denied) (involving sanction in
will contest).  The Valdez court
observed that the claims in Matelski and Kidd did not involve
claims found in section 38.001.  Valdez,
930 S.W.2d at 732.  





[5]  In any event,
even if Leticia had asserted claim for which she could recover attorney fees
under section 38.001, she would have to prevail on that claim to be entitled to
attorney fees.  See Green Int=l, Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997). 
Because of our disposition of the portion of the order increasing the
amount of monthly child, Leticia has not prevailed on her claim.  





[6]  Act of June
19, 1999, 76th Leg., R.S., ch. 1390, ' 15,
1999 Tex. Gen. Laws 4700, repealed by Act of June 16, 2001, 77th Leg.,
R.S., ch. 1289, ' 12, 2001 Tex. Gen. Laws 3111.  Former Section 156.301 of the Family Code was
still in effect at the time at the time Jeff sought modification of the order
and, therefore, is applicable.





[7]  The Honorable
Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at
Houston, participating by assignment.





[1]  Leticia argues
that her contract with her lawyer supports the application of chapter 38, but
that contract is not the “claim” involved in the case_changes in child support, conservatorship, parental
rights and duties, and residency restrictions were the claims.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 38.001
(chapter 38 applies to eight enumerated types of “claims”)





[2]  The Honorable
Lee Duggan, Jr., Retired Justice, Court of Appeals, First District of Texas at
Houston, participating by assignment.