COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-05-110-CV

 

JO ANN GEURIN PETTUS                                                     APPELLANT/

                                                                                           APPELLEE

 

                                                   V.

 

SHERRILL IVERSON PETTUS, MARC
ALLOJU,                          APPELLEES/

RUSSELL DECK, JOEY HARRISON, BALDO                             APPELLANTS

NAVAREZ,
JANICE ROBERTS, CURTIS W. MARTIN,

CHARLES
E. BEARDEN, AND RICHARD T. SINK

 

                                              ------------

 

              FROM
THE 90TH DISTRICT COURT OF YOUNG COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

INTRODUCTION








This appeal involves the
trial court=s decisions
regarding an arbitration that occurred within the context of a complex
divorce.  Appellant and cross-appellee,
Jo Ann Geurin Pettus, appeals the part of the trial court=s divorce decree allowing a pending arbitration proceeding to continue
after entry of the decree and the trial court=s subsequent judgment ordering Southern Bleacher Co., Inc.Ca closely held corporation that the trial court awarded solely to Jo
AnnCto pay arbitrators= fees and attorneys= fees to appellees and cross-appellants, Curtis W. Martin, Charles E.
Bearden, and Richard T. Sink.  Appellees
and cross-appellants, Marc Alloju, Russell Deck, Joey Harrison, Baldo Navarez,
Janice Roberts (all employees of Southern Bleacher), and Sherrill Iverson
Pettus (Jo Ann=s ex-husband),
appeal from the part of the trial court=s judgment vacating the arbitrators= decision.  In addition, Martin,
Bearden, and Sink (the arbitrators) appeal the rate of pre- and post-judgment
interest awarded by the trial court on their award of arbitrators= and attorneys= fees.  We reverse and remand the part of the
judgment awarding pre- and post-judgment interest, but we affirm the remainder
of the judgment.

FACTUAL AND PROCEDURAL
BACKGROUND

During their marriage, Jo Ann
and Sherrill jointly owned Southern Bleacher as a closely held Texas
corporation.  After Sherrill filed for
divorce, they became Adeadlocked@ in managing Southern Bleacher as well as two other related companies,
Southern Bleacher Construction Company, Inc. and Southern Bleacher Mfg. I,
L.L.C.  Jo Ann asked the trial court to
enter temporary orders appointing a receiver for the companies.  Instead, the parties entered into an
agreement on the record, pursuant to which the trial court entered AAgreed Additional Temporary Orders.@ 








In the agreed temporary
orders, the trial court outlined procedures for, among other things, reviewing
bids made by the companies, the signing of payroll and other checks, the
management of meetings, and the determination of compensation for employees of
the companies.  The agreement also
provided for certain matters to be arbitrated if Jo Ann and Sherrill could not
agree.  For instance, one provision of
the agreed temporary orders provided that A[a]ny bonus payments or salary increases for any employee or officer
of [the companies] must be determined jointly by Sherrill . . . and Jo Ann . .
. .  In the event there is a disagreement
between the two of them, then this issue shall be subject to arbitration as
hereinafter provided.@  The agreed temporary orders also provided
that no employee was to be retaliated against

by
reason of any of them appearing in Court, for any action that has taken place
in the past concerning testimony or proposed testimony in this case, or
touching upon the divorce of the parties, or for any involvement in what has
been referred to by the parties in their testimony . . . as >corporate
gamesmanship= and >jockeying
for position.= 

 

Under the agreed temporary orders, Southern
Bleacher was to compensate the arbitrators for their services in accordance
with the agreement.  The temporary orders
also stated that they were to Aremain in effect until a final decree of divorce is signed in this
cause of action or further order of this Court.@ 








The parties also had
difficulty agreeing on matters related to arbitrations occurring under the
agreed temporary orders.  Accordingly,
the trial court modified those orders by specifying how arbitration requests
and proceedings were to occur.  A couple
of months later, after one of the parties had filed a motion to vacate an
arbitration, the trial court signed an AOrder Providing Procedures for Submission of Arbitration Disputes.@  In this order, the trial court
confirmed the appointment by each party of an arbitrator and appointed a third
arbitrator to complete an arbitration panel that would handle all future
arbitrations.  The order also specified
procedures for arbitrations, scheduling of arbitrations, and compensation of
the arbitrators.  It also provided that
in its deliberations and decisions, the arbitration panel would be guided by
the best interest of the company concerned. 
The order further provided that A[a]ny disputes or issues concerning arbitrator compensation shall be
referred to the Court for resolution@ and that a decision Awill be effective and binding when counterparts of the award have been
signed by the three-person Arbitration Panel, or if a non-unanimous decision,
by the two arbitrators agreeing to the decision, and delivered or faxed to each
of the parties.@ 













On March 25, 2004, the
arbitrators issued a decision in a dispute that was referred to as AImpasse 8.@  In their decision, the arbitrators stated
that ASherrill . . . and Jo Ann . . . have requested a decision from
the Arbitration Panel . . . concerning the management of the business or the
Companies@ and that
Sherrill had raised Aissues
concerning bonus payments, commissions and/or severance compensation for
employees in the event of their termination arising out of a change in
ownership or management [of the companies] in connection with the divorce
proceedings.@  [Emphasis added.]  The decision stated that if an employee of
the companies was terminated before a change in ownership or management, then
Jo Ann and Sherrill would agree on Aan appropriate bonus, commission, and/or severance payment@ for the employee, or if they could not agree, they would submit the
matter for arbitration.  It also directed
that Aimmediately prior to any change in management or ownership, if [Jo Ann
or Sherrill] believes that an employee is at risk of termination arising out of
that change, then [the complaining party] shall identify such employee(s), and
propose an appropriate bonus, commission, and/or severance payment for each
such employee.@  Jo Ann and Sherrill were then to attempt to
agree on the matter, but if they could not, the decision directed them to
submit the matter for arbitration.  At
such an arbitration, the parties were to Aoffer each . . . affected employee the opportunity to be a party to
the arbitration concerning his/her compensation, provided that the employee
agrees to be bound by (and limited to) the decision of the arbitration.@  The arbitrators later
explained that in ruling on Impasse 8, they were concerned about the companies= ability to retain employees during the divorce proceedings and that a
change in management because of the divorce could result in the
termination of certain employees.  Jo Ann
has never challenged this decision.  See
Tex. Civ. Prac. & Rem. Code Ann.
' 171.088(a)(1), (b) (Vernon 2005) (providing that motion to vacate
arbitration award must be filed within ninety days after delivery of a copy of
the award to the applicant, or within ninety days after the grounds for the
motion are known if those grounds are Acorruption, fraud, or other undue means@).

On February 23, 2005Cafter a jury trial on most of the divorce issues and a bench trial on
the remaining issue, a licensing matterCthe trial court issued a letter ruling granting the divorce, outlining
the property division, and awarding Jo Ann both parties= community interest in the companies, for which she was to pay
Sherrill $24,000,000 Aas soon as
possible but in no event later than 45 days from the date@ of the signing of a decree. 
Although the letter contained the trial court=s ruling on the divorce issues, it also stated that

[t]his
matter should be completed as soon as possible consistent with the rights of
the parties.  There is no doubt that I
have overlooked something(s) [sic] and ask that you notify me of my omissions
as soon as possible.  Mr. Moses and/or
Mr. Aldridge [sic] are directed to prepare a proposed Decree consistent with
this ruling and submit it to other counsel of record for review. 

 








On February 25, 2005, the
trial court issued another letter stating that A[a]lthough not specifically stated in the letter ruling, there should
be no question but that the Temporary Orders in this case will remain in effect
until entry of a Decree.  No party will
engage in any actions that are contrary to those Temporary Orders.@  Thereafter, on February 28,
2005, Sherrill initiated Impasse 27 arising out of Impasse 8 and Sherrill=s and Jo Ann=s Aopposing views on . . . whether certain employees have been terminated
or constructively terminated and the amount of payment (if any) that should be
made to those employees as severance, commission and/or pro rata bonus.@   Neither party adopted a
suggestion made by the arbitrators in Impasse 8 to afford the affected
employees the opportunity to be parties to the arbitration.[1]       The
trial court signed a AFinal Decree
of Divorce@ on March
22, 2005.  In it, the trial court
dissolved the marriage and divided the parties= property, including a comprehensive listing of the items to be
divided.  In accordance with its February
23, 2005 letter ruling, it awarded Jo Ann the entire community interest in
Southern Bleacher and the other companies in exchange for the payment of
$24,000,000 cash to Sherrill.  The decree
also included the following provision regarding Impasse 27:








The pending arbitration proceeding initiated by
Sherrill . . . on February 28, 2005, identifying employees who are at risk of
termination along with proposed bonuses and severance payments described in
said motion shall continue before the existing arbitration panel established by
the temporary orders in this proceeding until concluded and confirmed if
judicial confirmation is required for any award. The temporary orders in
respect to this arbitration proceeding shall survive entry of this judgment and
remain binding upon both parties and the Southern Bleacher Companies which they
concern. 

 

The decree additionally provided that all other
liabilities and obligations imposed by the agreed temporary orders were
discharged, and it terminated the arbitration panel with the exception of
pending arbitration matters.  Further,
the decree contained a Mother Hubbard clause denying all relief not expressly
granted.  Also on March 22, 2005, Jo Ann
and Sherrill signed a Waiver of Appeal, in which they mutually agreed to waive
any right to appeal the decree except as to matters relating to the arbitration
of the impasse related to the Adetermination of severance pay@ for employees of the companies. 








On March 24, 2005, Jo Ann
filed a notice of appeal from the decree Ainsofar as it relates to her right to contest the arbitration related
to Impasse No. 26 [sic] wherein Sherrill . . . seeks a
determination of severance pay for certain employees@ of the companies.  That same
day, she also filed an AEmergency
Motion to Stay Arbitration@ with this court requesting that an order be granted before March 29,
2005Cthe scheduled date for arbitration of Impasse 27Cpending a determination of the appeal. 
In the motion, Jo Ann contended that the agreed temporary orders
requiring disputes to be submitted to arbitration were intended to be effective
only Auntil such time as the [trial] Court determined which party or parties
should own@ the
companies and that the arbitrators had no authority to act after entry of the
decree.  We denied the motion on March
28, 2005. 

The arbitration on Impasse 27
took place on March 29, 2005, and the arbitrators issued a decision on April 5,
2005.  On April 18, 2005, Sherrill filed
a motion to confirm the arbitrators= award in Impasse 27.  He also
filed a motion to modify the decree, or, alternatively, a motion for partial
new trial, in which he asked the trial court to modify the decree to confirm
the arbitration award in Impasse 27.  In
the alternative, he asked that a partial new trial be granted as to the
arbitration proceedings Aon the
ground that the Court erred in prematurely entering a judgment that purports to
be final but that does not dispose of all parties and issues in the case.@  Jo Ann responded by moving to
vacate the arbitration award.  The trial
court held a hearing on the motions on May 2, 2005.  








On May 13, 2005, the trial
court entered an order (1) vacating the arbitration award for failure to allow
cross-examination and remanding the matter to the arbitration panel, (2)
granting a new trial on the arbitration issues only, and (3) severing the
arbitration issues into a separate cause number, thereby rendering the decree
final.  The trial court also ordered the
parties to mediate the issues in Impasse 27, renamed Impasse 27A,[2]
before any further arbitration proceedings.[3]









Attempts to mediate the
matter failed, and the parties thereafter tried to schedule arbitration for
June 2005.  Because of scheduling
conflicts, Jo Ann and her counsel requested Athat the Panel continue a hearing until a date available for all
concerned.  It may be most efficient if
the Panel will submit a July and August calendar and ask the parties to mark
the dates they are unavailable.@  On July 12, 2005, however, Jo
Ann=s counsel sent the arbitrators a letter indicating that the agreed
temporary orders pursuant to which the arbitration was to occur had expired
with the decree becoming final and that the arbitrators no longer had authority
to conduct an arbitration on Impasse 27A. 
The letter stated that A[b]ecause the Panel lacks authority to rule on any further issues,
Southern Bleacher does not intend to compensate the arbitrators for the time
that they serve in matters relating to or arising out of@ Impasse 27A.  In addition, the
letter warned that Southern Bleacher no longer considered the indemnification
and immunity provisions of the trial court=s prior AOrder
Providing Procedures for Submission of Arbitration Disputes@ to be effective and that Southern Bleacher did not intend Ato waive its rights to seek indemnity from the arbitrators for any
damage they cause.@  The trial court was not copied with the
letter. 

On July 13, 2005, arbitrator
Bearden sent a letter to Jo Ann=s counsel acknowledging receipt of the letter and stating that Auntil I and/or the Arbitration Panel receives a signed order from [the
trial court], or the matter is resolved on appeal, or other assurances are made
to protect myself and the other Arbitrators from litigation, authority to act
as Arbitrators, and full compensation paid for time served, I will not act or
attend any arbitration proceedings.@  Thereafter, on July 18, 2005,
employees Alloju, Frank Beaman[4],
Deck, Harrison, Navarez, and Roberts filed a Plea in Intervention with the
trial court, naming the companies as parties and asking that they be cited to
appear. 








On July 28, 2005, Jo Ann and
Southern Bleacher filed a petition for writ of mandamus and emergency motion to
stay arbitration with this court, asking the court to vacate the trial court=s orders allowing the arbitration to continue past the signing of the
final decree and to stay the arbitration while the matter was pending.  Both this court and the Texas Supreme Court
denied emergency and mandamus relief.[5]

On July 29, 2005, the trial
court signed an order finding that Impasse 27A should Aproceed to arbitration on or before August 12, 2005,@ that it would be conducted according to the procedures previously set
in place by the trial court, that it would be Alimited to the sole issue or issues as set forth in the prior
arbitration decision,@ that Athe provisions of such prior arbitration relating to procedure shall
be strictly followed,@ and that Aall costs for such arbitration are to be paid by Southern Bleacher
Company.@ 

Jo Ann, along with the
companies, in response to the employees= plea in intervention, filed a AMotion to Strike Plea in Intervention and Original Answer Subject
Thereto@ on August 1, 2005.  The
companies did not enter a special appearance; instead, they joined in Jo Ann=s motion to strike the intervention and, subject only to the motion to
strike, joined in her answer to the intervention. 








The arbitrators held a
hearing on Impasse 27A on August 2 and 3, 2005. 
Before the hearing, the arbitrators suggested that the parties give the
affected employees an opportunity to be parties to the arbitration proceedings.  Jo Ann would not agree to this, and she also
contended that the companies would not be bound by the arbitration.  Although the arbitrators directed Jo Ann and
Sherrill to resolve the matter of whether the employees would be parties to the
arbitration before it took place, they did not. 
Jo Ann=s counsel
made it clear to the arbitrators that she did not wish to enter into any
agreement that would bind her or the companies to arbitrate with any employee.

When the issue arose again during
the hearing, Jo Ann=s counsel
contended that in accordance with Impasse 8, Jo Ann and Sherrill were required
to invite the employees to participate in the arbitration.  The arbitrators

therefore relieved counsel of
any obligation that they had to invite the [e]mployees to participate in such a
process, because [the arbitrators=] purpose in the Impasse 8 [r]uling was not to invite unilateral
agreement to the Arbitration process, but to afford the Companies with an
opportunity to have these matters fully and finally resolved through an
agreement that would bind the parties to [the arbitrators=] ruling.  As a result, no
[e]mployee became a party to [the arbitration.] 








The arbitrators issued a
decision in Impasse 27A on August 24, 2005. The arbitrators found that during
at least part of the divorce Beaman, Alloju, and Harrison were terminated Aas a result of, or in connection with@ the change in management of the companies; that Roberts, Deck, and
Navarez were constructively terminated as the result of, or in connection with,
the management change; and that some of the terminations or constructive
terminations involved retaliation, corporate gamesmanship, or both.  Accordingly, the arbitrators ordered the
companies to make payments totaling $438,500 to the employees in differing
amounts.  

Jo Ann filed a motion to
vacate the award, continuing to assert that the arbitrators exceeded their
authority in issuing a decision on Impasse 27A because the agreed temporary
orders had expired.  She later amended
her motion to additionally assert that the arbitrators exceeded their authority
by failing to follow the procedures in place for conducting the arbitration
because the affected employees were never made parties to the arbitration
agreement and that there was evident partiality by the arbitrators.  Sherrill and the employees filed a motion to
confirm the award. 








In October 2005, the
arbitrators sent a letter to Jo Ann and Southern Bleacher demanding payment for
the Impasse 27A arbitration.  On October
10, 2005, they received a letter from Jo Ann=s counsel stating that Jo Ann had no intention of paying the
fees.  Thereafter, the arbitrators filed
a plea in intervention against Jo Ann and Southern Bleacher, seeking recovery
of compensation for their services as arbitrators for Impasse 27A based on
breach of contract and quantum meruit. 
They also requested attorneys= fees under chapter 38 of the civil practice and remedies code.  Tex.
Civ. Prac. & Rem. Code Ann. ' 38.001(8) (Vernon 1997).  Jo
Ann, without the joinder of the companies, filed a motion to strike the
arbitrators= plea on
November 16, 2005. 

On April 18 and 19, 2006, the
trial court held a hearing on the arbitrators= plea in intervention, Sherrill=s motion to confirm, and Jo Ann=s motion to vacate the award. 
Counsel for the arbitrators filed an affidavit with the trial court
setting forth the amount of reasonable and necessary attorneys= fees incurred by the arbitrators in connection with their plea in
intervention and the reasonable and necessary fees that they would incur in
connection with an appeal. 

On September 6, 2006, the
trial court sent a letter to counsel for the parties in which it summarized the
history of Impasse 27A and concluded that the arbitrators did not follow the
court=s July 29, 2005 order.  However,
it did conclude that the arbitrators were acting in good faith; therefore, it
confirmed its prior ruling awarding the arbitrators actual damages and
attorneys= fees with
pre- and post-judgment interest.  The
trial court then asked for the parties= input regarding a suitable disposition of the matter.  Following are pertinent excerpts from the letter:








The court has little doubt that the affected
employees were placed into an untenable situation.  It became clear during the course of the
trial and post trial proceedings that there was an unmistakable course of retribution
directed to a number of employees.  This
is unfortunate and seems to be the underlying reason for submission of this
matter to arbitration.  By Agreement
and Court Order, both Mr. Pettus and Mrs. Pettus were bound by the Arbitrators=
decisions.  Neither asked the court to
confirm or set aside the Arbitration Decision on Impasse 8.  That ruling was in effect at the time the
Divorce Decree was presented to the court and was specifically severed out by
the court for final determination.  The court specifically ordered that the
Arbitration would occur on or before August 12, 2005 and that it would be
conducted in accordance with the procedures previously set by the court.  Additionally, the court ordered that the
provisions of the prior arbitration proceeding would be strictly followed.  In conducting this proceeding, the
arbitrators were following specific orders of this court.  To now argue that the Arbitration Panel was
without authority to conduct this proceeding is not convincing and is not well
taken by the court.

 

The argument that no impasse existed is likewise
not convincing.  Clearly, the matter
was raised by Mr. Pettus prior to the Decree of Divorce being signed and there
was no agreement between Mr. and Mrs. Pettus to pay bonuses, commissions,
and/or severance pay.  This is the
very meaning of Aimpasse@.  The court severed this matter from the
divorce and assigned a separate cause number to it.  The impasse existed and the arbitrators had
authority to hear it.

 

There is no argument from the court about Mr.
Pettus=
taking advantage of the Arbitration Process. 
However, as previously noted, this process arose as a result of an
agreement between Mr. and Mrs. Pettus which was set forth in the Agreed
Temporary Orders of November 21, 2003. 
Mr. Pettus did nothing more than utilize the procedure created by the
parties. . . .  Both parties knew from
the decision in Impasse 8 that the matter of severance could arise and neither
sought to address it at trial.

 








The real
issues in this matter are whether the arbitrators strictly followed the Aprovisions of such prior arbitration relating to procedure@ and whether they conducted the arbitration in Aaccordance with the procedures previously set by this Court.@

[Underlined emphasis added.] 

The trial court issued a
final judgment[6]
in the severed action on October 20, 2006. 
It granted Jo Ann=s amended
motion to vacate the arbitration award and the arbitrators= plea in intervention;[7]
it denied all other motions.  Thus, the
trial court vacated the award in Impasse 27A in its entirety.  It also ordered Southern Bleacher to
compensate (1) arbitrator Martin $17,520.45, (2) arbitrator Bearden $14,842.50,
and (3) arbitrator Sink $17,550.00, with pre-judgment interest of 7.75% on all
amounts from November 4, 2005 through the date of judgment.  The trial court further ordered Southern
Bleacher to pay the arbitrators= reasonable and necessary attorneys= fees of $32,250.00 through trial and conditional appellate fees in
the event of an appeal.  All money awards
were to accrue post-judgment interest of 7.75%.








After the trial court entered
its final judgment, the arbitrators filed a motion to modify, stating that the
correct rate of post-judgment interest was 8.25% as noted by the trial court in
its September 6, 2006 letter.  The trial
court did not rule on this motion. 
Sherrill and the employees filed a notice of appeal from the trial court=s decision indicating their intention to appeal the trial court=s granting of Jo Ann=s motion to vacate, and denial of Sherrill and the employees= motion to confirm, the arbitrators= award in Impasse 27A.  Jo Ann
filed a notice of appeal challenging the trial court=s award of arbitrators= and attorneys= fees to the
arbitrators, and the arbitrators filed a notice of appeal from the trial court=s grant of 7.75% pre- and post-judgment interest.  Southern Bleacher did not file a notice of
appeal.  Because Jo Ann had filed the
original notice of appeal challenging the trial court=s decision to continue the arbitration of Impasse 27A set forth in the
decree, we designated her as the appellant and cross-appellee and the remaining
parties as appellees and cross-appellants.

ISSUES AND CROSS-ISSUES PRESENTED








In three
issues, Jo Ann contends that the trial court erred by allowing the arbitration
of Impasse 27A to continue after entry of the divorce decree, by allowing the
arbitrators to intervene in the severed cause of action, and by ordering
Southern Bleacher to pay the arbitrators= fees and attorneys= fees.  In three cross-issues,
Sherrill and the employees contend that the trial court erred by vacating and
refusing to confirm the arbitrators= decision based on three grounds asserted by Jo Ann in her motion to
vacate.  And, also in a single
cross-issue, the arbitrators challenge the pre- and post-judgment interest rate
ordered by the trial court on the amounts awarded them for their services and
for their attorneys= fees.  We will address the issues related to
the  propriety of the arbitration (Jo Ann=s first issue) and the trial court=s order vacating the arbitration (Sherill and the employee=s cross-issues) first, and then address the issues related to the
arbitrators and the amounts the trial court awarded them (Jo Ann=s second and third issues and the arbitrators= cross-issue).

ISSUES
RELATED TO PROPRIETY OF ARBITRATION AND

TRIAL
COURT=S
ORDER VACATING THE ARBITRATION AWARD

 

Extension of Agreed Temporary
Orders

Jo Ann argues that the trial
court abused its discretion by allowing the arbitration of Impasse 27A to
continue after entry of the divorce decree. 
She contends that the agreement memorialized in the agreed temporary
orders was meant to be effective only until the trial court determined which
party would own the companies and, thus, that it terminated upon entry of the
decree.













The agreed temporary orders
stated that they would Aremain in
effect until a final decree of divorce is signed in this cause of action or
further order of th[e] court.@  [Emphasis added.]  There is nothing in the record to indicate
that any party objected to this language. 
Typically, temporary orders expire with the entry of a final judgment
and cannot function as a final disposition on an issue.  Coke v. Coke, 802 S.W.2d 270, 273 (Tex.
App.CDallas 1990, writ denied). However, a trial court may extend a
temporary order in its final decree.  See
In re Lozano, No. 01-06-00655-CV, 2006 WL 2640634, at *3 (Tex. App.CHouston [1st Dist.] Sept. 14, 2006, orig. proceeding); Coke,
802 S.W.2d at 273; see also Mathis v. Mathis, No. 04-95-00386-CV, 1996
WL 668849, at *3 (Tex. App.CSan Antonio Nov. 20, 1996, no writ) (not designated for publication)
(holding that trial court had discretion to continue temporary orders, which
stated that they would Acontinue in
full force until the signing of the final decree or until further order@ of the court, after entry of decree). 
Although a temporary order may not supersede a judgment once the
temporary order has expired, a trial court may enter temporary orders
independently of the final decree.  Coke,
802 S.W.2d at 273; see also Tex
Fam. Code Ann. ' 6.502
(Vernon 2006).  Additionally, the
rendition of a divorce decree does not itself nullify any temporary order.  See Ex parte Shaver, 597 S.W.2d 498,
500 (Tex. Civ. App.CDallas 1980,
orig. proceeding); Villarreal v. Villarreal, No. 14-04-00071-CV, 2005 WL
3116218, at *4 (Tex. App.CHouston
[14th Dist.] Nov. 23, 2005, no pet.) (mem. op.).  For example, a temporary order setting child
support is superseded as to future child support obligations by a final divorce
decree, but the obligation, as fixed by the temporary order, continues unless
specifically modified by the provisions of the divorce decree.  Shaver, 597 S.W.2d at 500; Villarreal,
2005 WL 3116218, at *4.

Here, the trial court
included language in the final decree specifically discharging Jo Ann and
Sherrill from any obligations under the temporary orders except the obligation
to arbitrate Impasse 27A.  Thus, that past
obligation was not extinguished by entry of the decree, and we must examine
whether the agreement set forth in the agreed temporary orders encompasses the
subject matter of the impasse.  See In
re Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 573 (Tex. 1999) (orig.
proceeding), abrogated in part on other grounds by In re Halliburton Co.,
80 S.W.3d 566, 571‑72 (Tex. 2002) (orig. proceeding) (holding that trial
court must compel arbitration after a party establishes that an arbitration
agreement exists and that the claims raised in the suit fall within the scope
of that agreement), cert. denied, 537 U.S. 1112 (2003); Tex. Cityview
Care Ctr., L.P. v. Fryer, 227 S.W.3d 345, 350-51 (Tex. App.CFort Worth  2007, pet. filed); Jabri
v. Qaddura, 108 S.W.3d 404, 410 (Tex. App.CFort Worth 2003, no pet.).








Federal and state law
strongly favor arbitration.  Cantella
& Co. v. Goodwin, 924 S.W.2d 943, 944 (Tex. 1996); Jack B. Anglin
Co. v. Tipps, 842 S.W.2d 266, 268 (Tex. 1992) (orig. proceeding); In re
Spiritas Ranch Enters., L.L.P., 218 S.W.3d 887, 901 (Tex. App.CFort Worth 2007, orig. proceeding). 
We resolve doubts as to the scope of an arbitration agreement in favor
of finding coverage.  In re Bank One,
N.A., 216 S.W.3d 825, 826 (Tex. 2007) (orig. proceeding); In re D.
Wilson Constr. Co., 196 S.W.3d 774, 782‑83 (Tex. 2006) (orig.
proceeding).

Both parties agree that the
agreed additional temporary orders contained a valid agreement to arbitrate any
disputes relating to any type of management decision affecting the
companies.  However, Jo Ann argues that
the arbitrators were Aauthorized
to act [only] while Jo Ann and Sherrill awaited the determination of who would
be awarded the@ companies
and that Jo Ann Anever agreed
to be bound by the arbitration process once the divorce was finalized.@  According to Jo Ann, there was
no need for the temporary orders to remain in effect after entry of the decree
because Sherrill no longer owned any part of the companies and, thus, no longer
had any stake in how they were managed. 













However, the parties never
disputed the language in the agreed temporary orders stating that they would be
effective until either the final decree was signed or a further order of
the trial court.  And construing the
agreement in the agreed temporary orders in favor of arbitration, as we must,
it is clear that it was meant to apply to disputes arising before a
change in management of the companies as opposed to disputes completed
before such a change.  The trial court=s February 23, 2005 letter indicating that it was awarding the
companies to Jo Ann was clearly interlocutory. 
See Goff v. Tuchsherer, 627 S.W.2d 397, 398-99 (Tex. 1982) (ALetters to counsel are not the kind of documents that constitute a
judgment, decision or order from which an appeal may be taken.@); Gregory v. Foster, 35 S.W.3d 255, 257 (Tex. App.CTexarkana 2000, no pet.) (AA letter is not a rendition of judgment if it only indicates the court=s intention to render a judgment in a certain way and sets out
guidelines by which counsel are to draw a judgment.@).  Thus, it was not until the
decree was actually signed that the change in ownership and management of the
companies occurred.[8]  Sherrill instituted Impasse 27A before the
entry of the final decree in reliance on the arbitrators= binding and unchallenged decision in Impasse 8.  Jo Ann=s contention that there was no need to complete the arbitration after
entry of the decree is contrary to the trial court=s and the arbitrators= concern about employees who might have been adversely affected by the
change in ownership and the need for a mechanism to address potential
compensation for those employees as a result of that change.[9]  Accordingly, we conclude that the parties= arbitration agreement as set forth in the agreed temporary orders
encompasses the dispute in Impasse 27A and that the trial court properly
allowed the arbitration, which was initiated before the decree was entered, to
continue after entry of, and independently from, the decree.  We overrule Jo Ann=s first issue.

Whether Trial Court Abused Its Discretion By
Vacating,

Rather Than Confirming, Arbitration Award

 








In their
cross-issues, Sherrill and the employees claim that the trial court erred by
vacating the arbitration award in Impasse 27A and that it should have instead
confirmed the award in favor of the employees.[10]  Jo Ann argued, and the trial court agreed,
that the arbitrators exceeded their powers by failing to abide by the prior
procedures set forth in Impasse 8 regarding making the affected employees
parties to any subsequent related arbitration, which the trial court had
specifically ordered the arbitrators to follow in its July 29 order.

We review a trial court=s vacation, modification, or confirmation of an arbitration award de
novo.  Hisaw & Assocs. Gen.
Contractors, Inc. v. Cornerstone Concrete Sys., Inc., 115 S.W.3d 16, 18
(Tex. App.CFort Worth
2003, pet. denied); Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld,
L.L.P.,  105 S.W.3d 244, 250 (Tex.
App.CHouston [14th Dist.] 2003, pet. denied) (op. on reh=g).  In Texas, review of
arbitration awards is extraordinarily narrow. 
Pheng Invs., Inc. v. Rodriguez, 196 S.W.3d 322, 328 (Tex. App.CFort Worth 2006, no pet.) (op. on reh=g); Hisaw & Assocs., 115 S.W.3d at 18.  Accordingly, courts indulge every reasonable
presumption in favor of upholding an award. 
Kosty v. S. Shore Harbour Cmty. Ass=n, No. 01-04-00698-CV, 2006 WL 2042385, at
*2 (Tex. App.CHouston [1st
Dist.] 2006, pet. denied); Pheng Invs., 196 S.W.3d at 328; IPCOBG.&C. Joint Venture v. A.B. Chance Co., 65 S.W.3d 252, 255-56 (Tex. App.CHouston [1st Dist.] 2001, pet. denied).  Every reasonable presumption must be indulged
to uphold the arbitrator=s decision,
and none is indulged against it.  Kosty,
2006 WL 2042385, at *2; IPCOBG.&C. Joint Venture, 65 S.W.3d
at 255-56.








In the absence of a statutory
or common law ground to vacate or to modify an arbitration award, a reviewing
court lacks jurisdiction to review other complaints, including the sufficiency
of the evidence to support the award.  Kosty, 2006 WL 2042385, at *2; Pheng
Invs., 196 S.W.3d at 328-29; IPCOBG.&C. Joint Venture, 65 S.W.3d
at 255-56.  By statute, a trial court may
vacate an arbitration award if the arbitrators have exceeded their powers.  Tex.
Civ. Prac. & Rem. Code Ann. ' 171.088(a)(3)-(4); Pheng Invs., 196 S.W.3d at 329.  The supreme court has stated that the Aauthority of arbitrators is derived from the arbitration agreement and
is limited to a decision of the matters submitted therein either expressly or
by necessary implication.@  Gulf Oil Corp. v. Guidry, 160 Tex.
139, 327 S.W.2d 406, 408 (1959); Pheng, 196 S.W.3d at 329.  Arbitrators therefore exceed their powers
when they decide matters not properly before them.  Pheng Invs., 196 S.W.3d at 329;
Barsness v. Scott, 126 S.W.3d 232, 241 (Tex. App.CSan Antonio 2003, pet. denied).








In its July 29, 2005 order,
the trial court required the Impasse 27A arbitration to be conducted in
accordance with the procedures set forth in the prior arbitration decision of
April 5, 2005.  In that decision, the
arbitrators stated that they Asuggested to the Parties in the Impasse 8 ruling that the Parties afford
these employees the opportunity to be a party to the arbitration.  We suggested this again to the Parties . . .
before this hearing.  Neither Party
adopted and/or acted on this suggestion.@[11]

In its September 6, 2006
letter, the trial court stated that

it is
clear that the Arbitrators were placed between the proverbial rock and a hard
place.  They chose to go forward without
requiring that the affected employees be Ainvited@ to
be [parties] to the arbitration and without the employees specifically agreeing
to be bound by, and limited to, the decision of arbitration.  The Parties, through their respective
counsel, were relieved of the duty to Ainvite@ the
employees to participate.  It cannot be
argued that the procedures were strictly followed.  They were not.  It is not disputed that the employees did in
fact participate in the arbitration proceeding. 
It is also undisputed that the employees never made an overt declaration
to be bound until after the fact, when they hired counsel and intervened in the
proceeding.  The issue becomes whether
the fact that the arbitrators failed to strictly follow the procedures, as
required, is excused by the employees= participation in the
arbitration process without ever agreeing to be bound by, and limited to, the
decision and whether the employees are nevertheless bound by the decision and
therefore entitled to confirmation and enforcement of that decision.

 

The arbitrators should have strictly followed the
procedures set forth in the decision in regards [sic] to Impasse No. 8.  If either, or both, of the Parties failed to
comply, the proceeding could have been recessed and the matter submitted to the
court.  The court could have directed and
ordered the Parties to comply with the directive of the arbitrators and
enforced that order by contempt.  By not
first directing the Parties to comply, the arbitrators did not follow the
orders of the court set forth in its July 29, 2005 Order.

 








The parties never challenged
the arbitrators= decision in
Impasse 8; therefore, it was binding upon them by the terms of their agreement
as set forth in the agreed temporary orders. 
And it required the parties to invite the employees to participate in
that arbitration; they did not.  Even
construing the parties= agreement
and the trial court=s orders
enforcing it in favor of the arbitration proceedings in Impasse 27A, it is
clear that the arbitrators failed to follow their own procedure set forth in
Impasse 8 and ordered by the trial court. 
Therefore, we hold that the trial court did not err by determining that
the arbitrators exceeded their powers and by thus vacating the arbitration agreement.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 171.088(a)(3); Pheng Invs., 196 S.W.3d at 329.  We overrule Sherrill and the employees= first cross-issue.[12]

ISSUES RELATED TO AWARD OF
FEES TO ARBITRATORS

Arbitrator=s Intervention in the Severed Action








Jo Ann contends in her third
issue that the trial court abused its discretion by granting the arbitrators= plea in intervention.  She
argues that the arbitrators had an inaccurate basis for their plea, that their
claim was not sufficiently related to the matter, and that their claims only
served to further complicate the issues.

Intervention is governed by
Texas Rule of Civil Procedure 60, which provides that A[a]ny party may intervene by filing a pleading, subject to being
stricken by the court for sufficient cause on the motion of any party.@  Tex. R. Civ. P. 60; In re Lumbermans
Mut. Cas. Co., 184 S.W.3d 718, 722 n.5 (Tex. 2006) (orig.  proceeding); Antonov v. Walters, 168
S.W.3d 901, 907 (Tex. App.CFort Worth 2005, pet. denied). 
Courts have considerable discretion in determining whether a petition in
intervention should be struck. 
Lumbermans, 184 S.W.3d at 722; Guar. Fed. Sav. Bank v. Horseshoe
Operating Co., 793 S.W.2d 652, 657 (Tex. 1990); Antonov, 168 S.W.3d
at 907.  A trial court abuses its
discretion by striking a plea in intervention if (1) the intervenor could have
brought the same action, or any part thereof, in its own name, (2) the
intervention will not complicate the case by an excessive multiplication of the
issues, and (3) the intervention is almost essential to protect the intervenor=s interest.  Guar. Fed. Sav.
Bank, 793 S.W.2d at 657; Law Offices of Windle Turley, P.C. v.
Ghiasinejad, 109 S.W.3d 68, 70 (Tex. App.CFort Worth 2003, no pet.).








A party has a justiciable
interest in a lawsuit, and thus has a right to intervene, when its interests
will be affected by the litigation.  Law
Offices of Windle Turley, 109 S.W.3d at 70; Intermarque Auto. Prods.,
Inc. v. Feldman, 21 S.W.3d 544, 549 (Tex. App.CTexarkana 2000, no pet.). 
However, the interest must be more than a mere contingent or remote
interest.  Law Offices of Windle
Turley, 109 S.W.3d at 70; Intermarque Auto. Prods., Inc., 21 S.W.3d
at 549.








The arbitrators intervened
because Jo Ann and Southern Bleacher refused to pay their fees for providing
arbitration services for Impasse 27A in accordance with the agreement
memorialized in the agreed temporary orders. 
The legislature has stated that a judgment creditor may move for the
trial court=s assistance
in the same proceeding in which the judgment is rendered or in an independent
proceeding.  Tex Civ. Prac. & Rem. Code Ann. ' 31.002(d) (Vernon Supp. 2006); see Main Place Custom Homes, Inc.
v. Honaker, 192 S.W.3d 604, 627 (Tex. App.CFort Worth 2006, pet. denied).[13]  Additionally, the court-ordered arbitration
procedures in this case stated that A[a]ny disputes or issues concerning arbitrator compensation shall be
referred to the court for resolution.@  Therefore, the arbitrators
would clearly have been able to bring the same action in their own names,
either in the same proceeding or independently.

 

 








Jo Ann argued that the
arbitrators complicated the issues of the severed action because their claims
were not sufficiently related to the matter, which at its core was a divorce
suit.  We disagree.  While the original proceedings primarily
concerned the divorce, the severed action applied only to the arbitration of
Impasse 27A.  And Southern Bleacher=s reason for refusing to pay the arbitrators is essentially the same
as Jo Ann=s main
challenge to the arbitration proceedings themselves (in the trial court and on
appeal):  that the arbitration agreement
set forth in the agreed temporary orders expired upon entry of the final
decree.  Thus, the arbitrators= claim for payment of services rendered during those arbitration
proceedings is sufficiently related to the issues in the severed action, and
allowing the intervention would not inject new issues into the case that were
completely unrelated to the principal issue in the severed action.  See City of Missouri City v. State ex rel.
City of Alvin, 123 S.W.3d 606, 617 (Tex. App.CHouston [14th Dist.] 2003, pet. denied) (ABecause Alvin=s issues
were identical to those in the quo warranto action, the intervention did not
complicate the case by an excessive multiplication of issues.@).  Indeed, the plea would not
have been necessary but for Jo Ann and Southern Bleacher=s refusal to pay the arbitrators= fees in accordance with the agreed temporary orders.  Accordingly, we conclude that the
intervention did not serve to further complicate the proceedings.

Furthermore, the arbitrators
had no complaint with the merits of the judgment, they merely sought to protect
their own interests.  Intervention is
allowed under such circumstances.  Cf.
Lerma, 166 S.W.3d at 893 (holding that trial court properly allowed
attorney to intervene in suit post-judgment to recover unpaid fees) (citing Breazeale
v. Casteel, 4 S.W.3d 434, 436 (Tex. App.CAustin 1999, pet. denied)).  We
find no reason to hold that the decision of the trial court in granting the
plea in intervention so that the arbitrators could protect their own interests
was an abuse of discretion.  We overrule
Jo Ann=s third issue.

Arbitrators= Fees and Attorneys= Fees








In her second issue, Jo Ann
contends that if the part of the decree ordering continued arbitration of
Impasse 27A was proper, then the trial court erred by awarding the arbitrators= fees and attorneys= fees in connection with their plea in intervention.  However, Jo Ann was not ordered to pay these
fees personally; instead, the trial court ordered Southern Bleacher to pay
those fees.  Southern Bleacher did not
file a notice of appeal, and Jo Ann did not indicate in her notice of appeal
that she was filing it as a representative of Southern Bleacher or on its
behalf.

An appellate court may not
grant a party who fails to file a notice of appeal more favorable relief than
did the trial court except for just cause. 
Tex. R. App. P. 25.1(c); Wagner
& Brown, Ltd. v. Horwood, 58 S.W.3d 732, 737 (Tex. 2001).  Although the circumstances constituting Ajust cause@ are not
addressed in rule 25.1 and have not been developed in the case law, Texas
appellate courts have uniformly declined to afford relief to parties who have
not filed a notice of appeal and make no showing of just cause.  Warwick Towers Council of Co-owners ex
rel. St. Paul Fire & Marine Ins. Co. v. Park Warwick, L.P., 218
S.W.3d 149, 150-51 (Tex. App.CHouston [14th Dist.] 2007, pet. filed).  Similarly, an appealing party may not
complain of errors that do not injuriously affect it or that merely affect the
rights of others.  Torrington Co. v.
Stutzman, 46 S.W.3d 829, 843 (Tex. 2000); Warwick Towers, 218 S.W.3d
at 150-51.








Here, the trial court=s judgment ordered Southern BleacherCnot Jo AnnCto pay the
arbitrators= fees in
connection with the arbitration proceeding.[14]  It also ordered Southern Bleacher to pay the
arbitrators= reasonable
and necessary attorneys= fees of
$32,250 for trial, with additional fees conditioned upon the filing of an
appeal.  In accordance with rule 25.1(c),
because Southern Bleacher did not file a notice of appeal, we may not grant it
relief.[15]  See Tex.
R. App. P. 25.1(c); Warwick Towers, 218 S.W.3d at 151; Tex-Hio
P=ship v. Garner, 106 S.W.3d 886, 893
(Tex. App.CDallas 2003,
no pet.).








Jo Ann contends that Southern
Bleacher was never a party to the case because it was never properly served;
thus, it was not required to file a notice of appeal.  The employees= petition in intervention named Southern Bleacher, Southern Bleacher
Construction Co., Inc. and Southern Bleacher Manufacturing Inc. as
defendants.  All three companies joined
Jo Ann in filing a motion to strike the intervention; however, none of the
companies challenged the trial court=s jurisdiction over the companies, nor did they challenge the alleged
defective service.  The substance of the
motion to strike was directed at the propriety of the intervention.  Accordingly, by joining in the motion to
strike, and filing an answer conditioned on the motion to strike, without
filing a special appearance or challenging the defective service, Southern
Bleacher made a general appearance in the case. 
Tex. R. Civ. P. 120, 121; Baker
v. Monsanto Co., 111 S.W.3d 158, 160-61 (Tex. 2003) (noting that answer to
plea in intervention did not challenge trial court=s jurisdiction, nor did party challenging intervention file motion to
quash for defective service; thus, party made general appearance); cf.
Silbaugh v. Ramirez, 126 S.W.3d 88, 94 (Tex. App.CHouston [1st Dist.] 2002, no pet.) (holding no general appearance when
motion to strike intervention made subject to special appearance).  Because Southern Bleacher made a general
appearance in the suit, and because Jo Ann never appealed in her capacity as
the representative or 100% owner of Southern Bleacher, Southern Bleacher should
have filed a notice of appeal if it wished to challenge the trial court=s judgment.  See, e.g., Tex. R. App. P. 25.1(c).  Accordingly, we overrule Jo Ann=s second issue.

Interest on the Judgment








Appellees
and cross-appellants Martin, Bearden, and Sink contend in their sole
cross-issue, and Jo Ann does not dispute, that the trial court erred by
awarding pre- and post-judgment interest at the rate of 7.75% per year, instead
of 8.25%, because the trial court=s September 6, 2006 letter indicates that the trial court intended the
interest rate to be 8.25%.

The statutory post-judgment
interest rate to be applied to a money judgment is determined by the consumer
credit commissioner.  Tex. Fin. Code Ann. ' 304.003(b) (Vernon 2006).  That
rate is published in the Texas Register by the Secretary of State.  Id. ' 304.004.  The Texas Supreme Court has held that the rate
of pre-judgment interest is the same as the rate of post-judgment interest at
the time of judgment.  Johnson &
Higgins of Tex., Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 529 (Tex.
1998).  A trial court must take judicial
notice of the published post-judgment interest rate at the time of judgment.  Tex.
Fin. Code Ann. ' 304.007.








This court may take judicial
notice of the correct, published rate on appeal.  Office of Pub. Util. Counsel v. Pub. Util.
Comm=n of Tex., 878 S.W.2d 598, 600 (Tex. 1994). 
When the trial court entered its final judgment on October 20, 2006, the
post-judgment interest rate as determined by the consumer credit commissioner
was 8.25%.  Judgment Rate Summary,
http://www.occc.state.tx.us/pages/int_rates/Index.html (last visited Sept. 12,
2007).  Thus, the trial court=s judgment should have reflected pre- and post-judgment interest at
the rate of 8.25%, not 7.75%.  We sustain
the arbitrators= sole
cross-issue.

CONCLUSION

Having sustained the
arbitrators= sole
cross-issue, we modify that part of the trial court=s judgment awarding pre- and post-judgment interest at the rate of
7.75% per year to award pre-judgment and post-judgment interest at the rate of
8.25% per year.  See Tex. R. App. P. 43.2(b).  Having overruled Jo Ann=s three issues and Sherrill and the employees= first cross-issue, we affirm the remainder of the judgment as
modified.

 

 

 

TERRIE
LIVINGSTON

JUSTICE

 

PANEL B:   LIVINGSTON,
WALKER, and MCCOY, JJ.

 

DELIVERED: September
13, 2007











[1]The
panel did, however, meet separately with Roberts, Harrison, Navarez, Deck, and
Alloju, the affected employees.





[2]For
ease of discussion, all further references to this arbitration proceeding will
be to Impasse 27A.





[3]We
abated this appeal pending the trial court=s entry of a final judgment
in the severed action.





[4]Although
Beaman was a party to the intervention, he is not a party to this appeal.





[5]We
denied both the motion for temporary emergency relief and the petition on
August 1, 2005, and the Texas Supreme Court denied relief on October 14, 2005. 





[6]The
judgment stated that Aall
relief not granted . . . is denied@ and that the Ajudgment
shall be considered the final judgment in this cause.@





[7]The
judgment references only the APlea in Intervention@
without identifying whether it was filed by the arbitrators or the
employees.  However, because the judgment
awards the relief requested by the arbitrators rather than the employees, we
presume that the APlea
in Intervention@
refers to the arbitrators=
plea.





[8]Although
the decree made the change in ownership retroactive as of December 31, 2004,
nothing in the record shows that the parties would have been aware of the court=s
intention to make the effective date retroactive before entry of the final
decree.





[9]We
also note that the subject of the arbitration involved claims the employees and
former employees would have asserted against the companies instead of Sherrill
and Jo Ann individually.  Thus, these are
in the nature of contingent, unliquidated claims that would naturally follow
the companies rather than the individuals, cf. Cross v. Old Republic
Sur. Co., 983 S.W.2d 771, 775 (Tex. App.CSan Antonio 1998, pet.
denied), and their existence would have been taken into account by the trial
court in the valuation of the companies and the ultimate property
division.  To that extent, then, such
claims are similar to any litigation pending against a company when a change in
ownership occurs by sale or merger.





[10]In
their three cross-issues, Sherrill and the employees contend that the trial
court erred by vacating the award on the following grounds:  that the arbitrators exceeded their
authority, that the employees and the companies were not made parties to the
arbitration, and that the award was obtained by undue means and evident
partiality.  We address the authority
ground first.





[11]Although
the April 5, 2005 decision characterizes the language in Impasse 8 as a Asuggestion,@ we
note that the Impasse 8 decision Adirects@ the
parties to invite the employees to participate as parties.





[12]Because
we hold that the trial court=s judgment is proper on the
first ground, we need not address Sherrill and the employees=
other two cross-issues.  See Tex. R. App. P. 47.1; Teague v. City
of Jacksboro, 190 S.W.3d 813, 821 n.7 (Tex. App.CFort
Worth 2006, pet. denied).





[13]Cf.
Law Offices of Windle Turley, 109 S.W.3d at 71 (quoting Serna
v. Webster, 908 S.W.2d 487, 491 (Tex. App.CSan
Antonio 1995, no writ), for holding that A[a] plea in intervention in
the principal suit is an appropriate vehicle by which a discharged attorney may
recover fees for services rendered@); Lerma v. Forbes,
166 S.W.3d 889, 893 (Tex. App.CEl Paso 2005, pet. denied)
(holding that section 31.002(d) contemplates the filing of an intervention by
an attorney to collect unpaid fees in a suit).





[14]The
record shows that Southern Bleacher paid the arbitration fees for all
proceedings prior to Impasse 27A. 





[15]The
trial court ordered Southern Bleacher, not Jo Ann personally, to pay these
fees.  Although Jo Ann is the sole
shareholder of Southern Bleacher, there is nothing in the record to indicate
that she would be personally liable for these fees.  See Tex.
Bus. Org. Code Ann. '' 21.223-.225 (Vernon Supp.
2006); Willis v. Donnelly, 199 S.W.3d 262, 272 & nn.13-16 (Tex.
2006) (holding that sole shareholders of corporation were not liable under
agreement because jury rejected claim that shareholders committed fraud and
there was no evidence that shareholders agreed to be personally liable under
agreement).